No. 2,519.

E. R. CARPENTIER, (Administrator, etc., of CATHERINE HAYES BUSHNELL deceased) APPELLANT, *v*. C. J. BRENHAM *et al*. RESPONDENTS.

MORTGAGE.—LEGAL TITLE.—It is definitely settled in this State that a mortgage does not convey the title to the mortgaged premises, but only creates a lien thereon for the security of the mortgage debt.

IDEM.—SENIOR AND JUNIOR MORTGAGEES.—EFFECT OF FORECLOSURE.—Although the foreclosure of a first mortgage, to which the junior mortgagee was not a party, does not affect the rights of the latter, yet such a foreclosure is valid between the holder of the first mortgage and the mortgagor; and the purchaser at the foreclosure sale acquires the legal estate of the mortgagor subject only to the lien of the junior mortgagee.

IDEM.—FORECLOSURE.—PARTIES.— Subsequent incumbrancers are not necessary, though proper parties, to an action to foreclose a mortgage.

IDEM.—EQUITY.—LEGAL TITLE AND MORTGAGEES' INTEREST.—Equity will keep the legal title and the mortgagee's interest, although held by the same person, separate, whenever necessary for the full protection of such person's just rights.

IDEM.—FIRST MORTGAGEE.—A first mortgagee who obtains a valid decree of foreclosure, and bcomes the purchaser at the foreclosure sale, acquires the legal title freed of the first mortgage as against the mortgagor and all persons brought into Court, while as against a junior mortgagee, who was

not a party to the foreclosure suit, he holds the legal title subject to both mortgages, and this, although he still retains his rights as first mortgagee.

IDEM.—SUBSEQUENT MORTGAGEE.—A subsequent mortgagee has no estate in the land itself nor any lien upon the land, except subject to the prior lien; that is, he has a right to be paid out of the excess; which is, in effect, a right to redeem, and incidentally—if made a party to a foreclosure suit—a right to defend by pleading the Statute of Limitations, or the invalidity in whole or in part of the plaintiff's claim, or that it is paid.

IDEM.—Whenever a subsequent mortgagee files a bill to redeem the former mortgage, or to redeem the former and to foreclose his own, he may allege and show that the claim of the prior mortgagee has been exaggerated, or any other kindred fact which will increase the fund.

IDEM.—No decree in a proceeding to which he was not made a party can deprive a mortgagee of the right to relief, by showing that an apparent prior incumbrance is fraudulent or not supported by any consideration.

IDEM.—A junior mortgagee possesses the right to extinguish the senior incumbrance; and, by whatever mode he may elect to exercise this right, it operates as a satisfaction of the claim of the prior mortgagee, and a release from his lien.

IDEM.—Although a subsequent mortgagee may bring his action against the mortgagor without making the prior incumbrancer a party, no decree in the suit can affect the prior incumbrancer, whose rights are paramount.

IDEM.—RIGHT TO REDEEM.—The right of the subsequent mortgagee as against the purchaser at the foreclosure sale under the first mortgage, is a right to redeem.

IDEM.—A suit of foreclosure as against a younger mortgagee is a suit to cut off the right of redemption; when therefore, the younger mortgagee is not made a party, his right to redeem is unaffected by a decree of foreclosure and a sale under it.

IDEM.—PURCHASER AT FORECLOSURE SALE.—SUBROGATION.—A purchaser at foreclosure sale who voluntarily discharges a junior mortgagee, is not, as a matter of law, thereby subrogated to all the rights which the junior mortgagee ever had against the mortgagor; but—if entitled to subrogation at all—only to such right as the junior mortgagee has at the time of the payment of his mortgage debt.

APPEAL from the District Court of the Twelfth District, City and County of San Francisco.

The facts are stated in the opinion.

*W. H. Patterson* and *Clarke & Carpentier,* for Appellant.

*First*—In all cases where the ownership of the estate mortgaged has passed from the mortgagor, by operation of

law, the rule is that the mortgaged premises are the primary fund for the payment of the debt.

By a sale of the equity of redemption upon execution, the mortgaged premises become in equity the primary fund for the payment of the mortgage debt, and the personal liability of the mortgagor to pay the debt becomes separated from the ownership of the land, and from the remedy upon the mortgage against the land. And a judgment in favor of the mortgagor, in a suit brought upon the bond after such sale, could not be pleaded by the purchaser of the mortgaged premises by way of estoppel in bar of a suit to foreclose the mortgage. (*Heyer* v. *Pruyn*, 7 Paige, 465; *Tice* v. *Annin*, 2 Johns. C. R. 125.)

The agreement under consideration does not in terms attempt to release the debt, or to release Brenham from personal liability. It only agrees and undertakes, that after exhausting the remedy on the mortgage by a sale of the mortgaged premises, Brenham's other property shall not be subjected to the payment of any deficiency. Somewhat similar instruments were held not to operate as a release of the debt in *Miller* v. *Fenton*, (11 Paige, 18); *Bruen* v. *Marquand*, (17 John, 58); *Hubbell* v. *Carpenter*, (1 Selden, 171); *Christy* v. *Dana*, (34 Cal. 548); *Stewart* v. *Eden*, (2 Caines R. 121.)

A release of only the personal liability of the mortgagor for the debt, leaves the mortgage a valid claim against the lands in the hands of one to whom the land has been conveyed, subject to the payment of the mortgage. (*Chamberlain* v. *Dempsey*, 13 Abb. P. R. 61; *Tripp* v. *Vincent*, 3 Barb. C. R. 614–5; *Newton* v. *Scott*, 9 Mees. and Wels. 432; 2 B. and Bing. 38; 4 M. and S. 423; 3 B. and A. 175; 18 Pick. 325; 7 Cow. 662.)

A release of the debt releases the mortgage; but the invocation of this rule would not prevent the mortgagee, when he takes his decree, from waiving the personal liability of the mortgagor, or from contracting to do so before decree.

When Brenham mortgaged to Moss he still retained the fee; when he mortgaged to Hayes he still retained the fee, subject to the two mortgages; when the Moss mortgage was foreclosed, and the Sheriff's deed was executed, he was divested of the fee, but the fee still remained subject to the payment of the Hayes mortgage; and the fee and not the personal liability of the mortgagor became the primary fund for the payment of the debt.

*Second*—When Brenham mortgaged to Hayes, she acquired, among other rights, that of foreclosing her mortgage. (*Peabody* v. *Morse,* 47 Barb. 91; *Walsh* v. *The Rutgers Fire Ins. Co.* 13 Abb. P. R. 33; *Vanderkemp* v. *Skelton,* 11 Paige, 28; *Norton* v. *Warner,* 3 Edw. C. R. 106; *Hilliard on Mortgages,* 300; *Cullman* v. *Erwin,* 4 Ala. (N. S.) 452; *Alexander* v. *Greenwood,* 24 Cal. 511–12; *Lord* v. *Morris,* 18 Id. 484.)

As she was not made a party to the foreclosure of the first (Moss) mortgage, no right of hers was affected thereby. (*Haines* v. *Beach,* 3 Johns. C. R. 459; *Montgomery* v. *Tutt,* 11 Cal. 315; *Goodenow* v. *Ewer,* 16 Id. 469; *Alexander* v. *Greenwood,* 24 Id. 512; *Boggs* v. *Hargrave,* 16 Id. 563–4–5; *Skinner* v. *Buck,* 29 Id. 253; *Bludworth* v. *Lake,* 33 Id. 264–5; *Carpentier* v. *Williamson,* 25 Id. 161; *Besser* v. *Shultz,* lately decided in the Supreme Court of Oregon, not reported.) All question as to the right of the plaintiff to maintain the action in the present form, is definitely determined by the language of Section 246 of our Practice Act. To hold that a foreclosure as against the mortgagor defeats the rights of the second mortgagee to foreclose, is to resort to the exploded doctrine that a mortgage was a conveyance of the fee, subject to be defeated before condition broken by payment, and that a second mortgagee only obtains the right to pay the first mortgage, because that was all the mortgagor could convey, as by the first mortgage the fee had already been conveyed (*Goodenow* v. *Ewer,* 16 Cal. 461; and *Fogarty* v. *Sawyer,* 17 Id. 589); and would be to utterly ignore the rule in this State and in modern times, that a mortgage only creates a lien which must be enforced by

foreclosure, and which permits the second mortgagee to avail himself of the Statute of Limitations as against the prior mortgage. ` (Lord v. Morris, 18 Cal. 482; McCarthy v. White, 21 Id. 501; Leat v. Shear, 26 Id. 365; Buckout v. Swift, 27 Id. 434–6; Rix v. McHenry, 7 Id. 89; Alexander v. Greenwood, 24 Id. 505; Goddefroy v. Caldwell, 2 Id. 489; Fogarty v. Sawyer, 17 Id. 589; Goodenow v. Ewer, 16 Id. 609; Dutton v. Warschauer, 21 Id. 609; McMillan v. Richards, 9 Id. 365). And after condition broken no estate passed to the mortgagee. (Johnson v. Sherman, 15 Cal. 287; Naglee v. Macy, 9 Id. 426; Boggs v. Hargrave, 16 Id. 560).

When the action of Moss v. Brenham was commenced, Brenham had the fee subject to the second mortgage. It was the estate thus subject, that was operated upon by the decree in that case, and passed by the Sheriffs' deed to Moss, and Moss and the now defendants as his successors acquired the right to retain the fee on paying the Hayes mortgage. (Fogal v. Pirro, 17 Abb. P. R. 130–1.) They did not acquire any right to compel the plaintiff to redeem, because no part of the Moss debt was transferred to them. The lien under the decree was satisfied by the sale, and the purchase of the entire property by Moss was a satisfaction and merger of his mortgage debt to the extent of his bid; and the subsequent release by Moss satisfied the residue. (Starr v. Ellis, 6 Johns. C. R. 393; James v. Johnson, Id. 417; Burnett v. Denniston, 5 Id. 35; Mills v. Comstock, Id. 214.) The vendees of Moss, the defendants in this action, acquired by their deeds only such interest and rights in the fee as Moss possessed at the time of his vendition. (Haines v. Beach, 3 Johns. C. R. 459.) They have no right now to complain because their lands are subject to the Hayes mortgage, for they purchased of Moss with full record knowledge of all the facts.

All the title that Moss had was such as he acquired by his purchase under the foreclosure proceedings, to which Hayes, the junior mortgagee, was not a party, and he therefore took, by the Sheriffs' deed, the legal title as it existed in Brenham, discharged of the Moss mortgage, but subject

to the lien of the Hayes mortgage. That title so acquired was good as against the parties to that suit, but it can not be set up against the subsisting equities of an incumbrancer who was not a party. (*Haines* v. *Beach, supra.*) The vice of the defendants' argument and position, consists in being unable to remember that the common law rule of mortgages, as it existed when the ancient forms and decrees collated by Seaton was adopted, has never prevailed in this State. (Seaton's Forms and Decrees, 155-13-14.) Then a mortgage was a conveyance; it vested the *title and possession* in the mortgagee, subject to be defeated by payment of the debt on the day fixed, and if not paid on that day, the estate was absolutely that of the mortgagee, as of the date of the mortgage. (Powell on M. 4 a.) It was considered dead as to the mortgagor. (Powell on M. 107 b.) Of course it followed that the mortgagor, before or after condition broken, had no estate which he could convey by a second mortgage; and before he could have any estate *at law*, he had to have a re-conveyance from the mortgagee before the latter was divested of the legal estate, even though the debt had been paid before condition broken, in which case *equity* regarded the mortgagee as holding the *legal estate* in trust for the mortgagor. (1 Salkeld, 158.) Later in the history of jurisprudence, equity held that the legal estate was in the mortgagee, the mortgagor had a right to redeem within a reasonable time after *condition broken*, and this was called an "*Equity of Redemption*," which may be defined to be the right to pay the debt, and thereupon to have a re-conveyance. But still later, and especially in California, the rule became settled, that a mortgagor created *only a lien* upon the estate, and that the legal title remained in the mortgagor, who could *not be divested of his estate* except by foreclosure; and if the mortgagee suffered four years to elapse after his debt became due, without bringing his action to foreclose, the estate by operation of the Statute of Limitations became relieved from the lien of the mortgage. So it follows, that having the *legal title*, the mortgagor could create successive liens by way of mort-

gage thereon, and the second mortgagee has the right to insist that the first mortgage is barred by the Statute of Limitations, has been paid, &c.; that is, he could plead and insist upon any defence which the mortgagor could be allowed to make. Then, having these rights, the second mortgagee, not being a party to the action to foreclose the first mortgage, they all remain to him; and, notwithstanding a judgment of foreclosure and sale under the first mortgage, the right still remains in the second mortgagee to contest the amount due, or to plead the Statute of Limitations to the first mortgage. The judgment of foreclosure is not only not binding on the second mortgagee, but is not even admissible in evidence against him, because he is not a party to it and does not claim under a party thereto, his rights having *accrued* prior to the commencement of the action; and the mortgagor and first mortgagee could do no act nor make any admission *to his prejudice.*

Let us suppose, to illustrate, that the Hayes mortgage was executed and recorded, Brenham, who then held the legal title subject to the Moss and Hayes mortgage, had conveyed to J. Mora Moss, who was also the owner of the Moss mortgage; then Moss would have been the owner of the legal estate, subject *only* to the lien of the Hayes mortgage, which would have given him the right to pay off the Hayes debt, and also the right to plead the Statute of Limitations against the enforcement of the Hayes debt. Now we submit that a Sheriffs' sale and deed founded upon the first mortgage, as against the mortgagor, no more divests the latter of his legal estate, than his voluntary conveyance would, and still leaves the estate subject to the Hayes mortgage; for the first mortgage and the legal estate had become merged. Brenham no longer retained the right to pay the Hayes debt, and be restored to his estate as it existed at the date of the Hayes mortgage. Moss had no right to claim that Hayes should pay his debt, because the extinguished it by his bid, and by the release put in evidence. Again, by redeeming, we should have to pay whom? Not Moss, because he has parted, by his con-

veyances, with what he acquired by the Sheriff's deed. Not the other defendants, (his grantees), because Moss did not assign to them his debt, or any portion or proportion of it. They bought the property *cum onere*, but not the claim or lien with which Moss had paid for it. Nor could the Court ascertain in what proportions the "redemption money" should be apportioned among the defendants.

The Moss mortgage was also a lien upon other property in San Francisco, though the amount realized from the San Francisco property is not stated. If a redemption were ordered, what should be paid, and to whom? . It is submitted that the defendants would be chargeable with the rental value of the property during their possession, while the amount to be paid on redemption would be at most, in this case, only the bid at the Sheriff's sale with statutory interest, deducting the rents. (*Moore* v. *Cable*, 1 Johns. C. R. 385). And the learned Judge who granted the new trial, seems to be of opinion that there should not be a *technical redemption*; that this action is well brought in form, but that the first proceeds of the sale to be made, should be paid to the defendants, though to what extent he does not clearly indicate.

*John W. Dwinelle, W. H. Glascock, Williams & Thornton,* and *H. P. Irving,* for Respondents.

*First*—The authorities fully sustain the proposition that the covenant to discharge Brenham from personal liability extinguished the debt as a debt. (*Robinson* v. *Levett*, 7 N. H. 73; *Clark* v. *Bush*, 3 Cowen, 152; *Clayton* v. *Kynaston*, 2 Salk. 573; Bac. Abr. Release A. 2; *Hatch* v. *White*, 2 Gall., 155; *Jackson* v. *Stackhouse*, 1 Cowen, 122; Pow. on Mortg. 199; *Coyler* v. *Coyler*, 2 Johns, 186; 8 Johns, 54; 4 Wendell, 612; *Chastian* v. *Sinanet*, 21 New York, Greenleaf's Evidence, Sec. 186; *People* v. *Robles*, 34 Cal. 591.)

If that debt has been extinguished by a release, then, clearly, the plaintiff has no right to subject the lands of the defendants to the payment of that which was a debt, but which, by the terms of the covenant, lost its character as a debt. If the stipulation that the lands should con-

tinue liable for the mortgage debt had been assented to by the defendants, if they had been parties to the arrangement, then they might have been bound thereby. But the defendants are not parties to the arrangement, and are, therefore, entitled to avail themselves of the fact that the debt has been released or paid. But let us suppose the plaintiffs are liable, in respect to the lands, for the claim. We insist they would be clearly entitled, upon the payment of the debt, to an assignment of the securities. Now, in this case, the plaintiff has by his own act destroyed the security.

If these defendants are compelled to pay Brenham's debt, they are entitled to an assignment of Brenham's note. The obligation of that note has been destroyed by the plaintiff. He is, therefore, not in a position to require that the defendants should pay the debt in order that they might retain the lands which they have purchased for a fair consideration, which has been paid to Brenham, or what is the same thing, to the discharge of his debt to Moss.

*Second*—Under the facts of this case, a complaint for a mere foreclosure of the second mortgage would not lie. The plaintiff's remedy was, primarily, a bill to redeem from the first mortgage; that is, on the footing of having the second mortgage, to bring all holding under the first mortgage into Court, ask to have the mortgage lands sold, the first mortgage debt paid in full, and himself paid out of the balance of the proceeds, if any. We use the terms " equity of redemption," and " bill to redeem", for convenience, because Courts and lawyers continue to use them and will probably always do so. By " equity of redemption" we mean, unless otherwise defined, the right to foreclose; and by " bill to redeem," the right of a subsequent incumbrancer, as above defined.

According to the principles of the common law, under which a mortgage constitutes an estate in the land, this proposition will not be denied. The mortgagor has no other right than to redeem, and, of consequence, can pass no greater right to a subsequent mortgagee. This the counsel

for plaintiff do not deny, but speak of it as an exploded doctrine, and without application under our present system.

When Brenham and Saunders executed their mortgage to Moss, they gave him a lien, with the right in case of non-payment, to acquire the legal title by foreclosure and sale, and the pretended second mortgage to Catherine Hayes was subject to this right of Moss. When the defendants then acquired the fee, under foreclosure of the first mortgage and sale, they stood precisely as the mortgagee stood at common law after default; that is, they had the legal title, subject to the right of a subsequent mortgagee to redeem; in each case the legal title is held under a prior mortgage, and therefore the same principles of law are equally applicable. In both cases, the only right of the subsequent mortgagee is to redeem from the first mortgage.

This is all Catherine Hayes could have done if she had been made a party to the foreclosure of the first mortgage.

In fact, the position of Catherine Hayes, under the pretended second mortgage, would be precisely the same in England as here. Even in England, her second mortgage would be only an equitable security, just as it would be here, for the legal estate would have already passed under the English law to Moss by the first mortgage, and so no legal estate would pass to her under the second mortgage, until she had redeemed from the first mortgage, and then not *proprio vigore* of the second mortgage, but only by virtue of the decree made in her favor on her bill to redeem.

The following authorities are cited to sustain, our position: (*Whitmore* v. *Roberts*, 10 How. Pr. R. 54; *Watson* v. *Spear*, 20 Wend. 262; *Gage* v. *Brewster*, 31 N. Y. 220; *Peabody* v. *Roberts*, 47 Barb. 91; *Whitney* v. *Higgins*, 10 Cal. 547; *Montgomery* v. *Tuttle*, 11 Cal. 307; *Kirkham* v. *Dupont*, 14 Cal. 564; *Gamble* v. *Voll*, 15 Cal. 510; *Goodman* v. *Ewer*, 16 Cal. 461; *Boggs* v. *Hargrave*, 16 Cal. 559; *San Francisco* v. *Lawton*, 18 Cal. 473; *Alexander* v. *Greenwood*, 24 Cal. 509; *Brainerd* v. *Cooper*, 10 N. Y. (6 Seld.) 356.)

The whole of the Moss debt passed to the purchasers under the first foreclosure, no matter whether the whole amount of it was bid or not.

There was no merger of the lien with the realty, for there being a manifest interest to keep them separate, the law keeps them apart.

The plaintiff had the right to foreclose her mortgage, but could do so only by bringing the holders under the first mortgage into Court, and also all other previous incumbrances, and asking to have the land sold and their claims first satisfied out of the proceeds, and the surplus, if any, to go to satisfy her mortgage.

The amount of these claims was the full amount of the first mortgage debt, with interest to the date of the final payment out of the proceeds of sale.

Where all the incumbrancers, having liens on the equity of redemption, are not made parties to the foreclosure suit, it is presumed that the lien of the first mortgage is kept alive for the benefit of the purchaser, and assigned to him. No redemption can be made, therefore, without paying the whole amount of the debt. (*Vanderkemp* v. *Shelton*, 11 Paige, 28, 35; *San Francisco* v. *Lawton*, 18 Cal. 473; *Peabody* v. *Roberts*, 47 Barb. 91; *Gage* v. *Brewster*, 31 N. Y. 220; *Kirkham* v. *Dupont*, 14 Cal. 564; *Gamble* v. *Vail*, 15 Id. 510.) Also, the authorities cited by appellant on this point. Consequently, Moss had no lien to release, as it had passed to the purchasers under him. Consequently, also, the plaintiff has mistaken his form of action. Instead of bringing the defendants into Court, and asking to have them paid off, as he ought to have done, he has not merely ignored, but denied and disputed, their rights to the last moment. Even if he had stated their rights under the first mortgage, his complaint would have been demurrable as barred by the Statute of Limitations. The case of *Beser* v. *Shultz*, Supreme Court of Oregon, cited by plaintiff, is so decidedly against the plaintiff that we call the attention of the Court to it.

The plaintiff asks: "Again, by redeeming, we should

have to pay whom?" Why, of course, Moss, and those who purchasing the lands from him have become the assignees of the first mortgage debt, in proportion to the interests which they have respectively purchased in the lands.

The plaintiff submits, that the Moss mortgage was also a lien upon other property in San Francisco, and asks if a redemption were ordered, what should be paid, and to whom; and makes other suggestions concerning rents and profits. These questions would have been pertinent and proper if the plaintiff had framed his complaint so as to raise them; but, as they can never be raised in this action, they present only legal conundrums, which neither Court nor counsel are called upon to answer. We will submit, however, that Courts have decided questions more complicated than those suggested by the plaintiff. (*Kirkham* v. *Dupont*, 14 Cal. 564; 19 Pick. 238; *Vanderkemp* v. *Shelton*, 11 Paige, 28.)

Section 246 of the Practice Act has not the effect attributed to it by the plaintiff's counsel. It was enacted to prevent a common practice in some States of suing the bond or note accompanying the mortgage, and exhausting the personal security of the maker before resorting to the land. It merely requires that suit shall be brought first on the mortgage, the land exhausted, and then a personal judgment rendered for the deficiency, if any.

CROCKETT, J., delivered the opinion of the Court, TEMPLE, J., and RHODES, C. J., concurring.

This is an action brought by the plaintiff as special administrator of the estate of Catherine Hayes Bushnell, deceased, to foreclose a mortgage made by the defendant Brenham in the year 1855 to the said Catherine Hayes in her lifetime. A judgment of foreclosure having been rendered in the Court below, the defendants moved for a new trial, which was granted, and the plaintiff has appealed from the order granting the new trial.

It becomes necessary, therefore, to inquire into the merits of the action, inasmuch as the order granting the new

trial will not be reversed, if on the whole record it appears to have been correct. It appears from the record, that prior to the execution of the mortgage to Catherine Hayes, Sanders & Brenham executed, in due form, to one Samuel Moss, Jr., a mortgage upon the same premises, to secure a debt of $50,000, which mortgage was duly recorded and afterward assigned to J. Mora Moss, who afterward commenced an action to foreclose the same, but omitted to make the said Catherine Hayes (the holder of the subsequent mortgage) a party thereto. A decree of foreclosure having been duly rendered in said action, the mortgaged premises were sold thereunder to the said J. Mora Moss, and the purchase money therefor was credited on said judgment of foreclosure, leaving a considerable portion of said judgment still unpaid. There having been no redemption from said sale, the said Moss in due time, obtained the Sheriffs' deed for said premises, and the defendants, other than the defendant Brenham, deraign title to separate and several portions of said premises under the said Moss. The present action was brought within less than four years from the time when the demand to Catherine Hayes from Sanders & Brenham became due and payable, but more than four years had elapsed after the judgment of foreclosure in the case of Moss before the commencement of this action. It further appears in the case, that the said Catherine Hayes died, leaving a last will and testament in which she appointed one Power her executor and residuary legatee, and that said will has been duly admitted to probate in this State, and the plaintiff has been duly appointed special administrator of said estate. It also appears that after the purchase by said Moss at his foreclosure sale of the said mortgaged premises, and after obtaining the Sheriffs' deed therefor, he released the said Brenham from the balance remaining unpaid of his said mortgage debt. If the mortgage to Moss had not been foreclosed, and had remained a valid, subsisting and unsatisfied lien upon the mortgaged premises, it would, of course, have been entitled to priority over the junior mortgage, so long as it was not barred by the Statute of Limitations.

The most important question in the case is, what change was effected in the status of the two mortgages by the foreclosure of the first, and the sale of the mortgaged premises, and the release of the remainder of the mortgage debt, as hereinbefore stated. In discussing this question it may be assumed as definitely settled in this State: first, that a mortgage does not convey the title to the mortgaged premises, but only creates a lien thereon for the security of the mortgaged debt; second, that a foreclosure of the first mortgage, to which the junior mortgagee was not a party, does not affect the rights of the latter. Nevertheless, such a foreclosure is valid as between the holder of the first mortgage and the mortgagor; and the purchaser at the foreclosure sale acquires the legal estate of the mortgagor, subject only to the lien of the junior mortgagee.

On behalf of the plaintiff it is insisted, that if the debt secured by the first mortgage is either wholly satisfied by the sale, or if it is only partially satisfied, and the remainder of the mortgage debt is released, as in this case, the effect of the transaction will be wholly to extinguish the lien of the first mortgage and to substitute the purchaser only to the rights of the mortgagor, leaving the junior mortgagee at liberty to assert and enforce the lien of his mortgage in the same manner as if the first mortgage had been absolutely released by the mortgagee, and the purchaser had acquired by a direct conveyance the legal title of the mortgagor. In other words, it is claimed that the effect of the proceeding is wholly to extinguish the lien of the first mortgage, and that thereafter the junior mortgagee may proceed to foreclose his mortgage by a simple foreclosure suit, in the same manner as if the first mortgage had never existed. On the other hand, it is insisted for the defendants that whilst the rights of the junior mortgagee are not prejudiced by the foreclosure of the first mortgage, the purchaser at the fore-closure sale succeeds not only to the legal estate of the mortgagor, but also to the rights of the first mortgagee as against the junior mortgage; and that for the purpose of protecting the purchaser against the lien of the second mortgage

except subject to the lien of the first, a Court of Equity will treat the debt secured by the first mortgage as still subsisting and unsatisfied. In discussing this point, the District Judge, in granting the motion for a new trial, says: "The point seems to be that the plaintiff should not be compelled to redeem the first mortgage, because it has become merged in the legal title by a proceeding which the plaintiff disavows and holds for nought.

"But, in the first place, the foreclosure in favor of Moss is not void, and, in the second place, Moss, the purchaser at the foreclosure sale, did not, as against the plaintiff, merge his equitable rights as first incumbrancer in the legal title. The Moss decree is not void. It is not absolutely essential to make subsequent incumbrancers parties to a foreclosure suit. If not so made they are not bound by the decree, but they are not necessary parties as between the mortgagor and the mortgagee, and in many cases where the value of the property is less than the mortgage, it may be unimportant to the mortgagee to make them parties, and it would be a great hardship to compel him to make them so. (*Montgomery* v. *Tutt,* 11 Cal. 307.) Subsequent incumbrancers are not necessary, though proper parties, to an action to foreclose a mortgage. (14 Cal. 549; Story Eq. Pleadings, 196; 33 Cal. 32.)

"The decree, therefore, is valid for every purpose, except that it cannot be used to deprive the representatives of Catherine Hayes of any rights which she possessed when the Moss suit was brought, or the decree therein entered.

"Nor do the proofs sustain the allegations in the plaintiff's complaint, that the purchasers at the Moss foreclosure sale acquired only a title, subsequent and subject to the lien of the plaintiff's mortgage. As to the rest of the world, the purchaser took the whole estate and interest of the mortgagor and mortgagee, as the same existed at the date of the Moss mortgage, and that lien was swallowed by the title. (7 Paige, 250; 16 Barb., 25.) But equity will keep the two estates—or the legal title and the mortgagees' interest—although held by the same person, separate, whenever

this is necessary for the full protection of such person's just rights. The purchaser at such a sale became, as against the plaintiff, the equitable assignee of the claim of the first mortgagee, and held a lien on the premises to that extent. (*Besser* v. *Shultz et al.;* Supreme Court of Oregon.)

"J. Mora Moss brought his suit to foreclose his mortgage within four years after the maturity of the note, to secure which the mortgage was executed. He obtained a valid decree, binding upon the mortgagor and all persons brought into Court, and the purchaser under such decree, as against them, acquired the legal title, freed of the first mortgage; while as against the plaintiff, he held the legal title, subject to both mortgages, and this, although he still retained his rights as first mortgagee.

"When the mortgagor and mortgagee contract, the former agrees that, in case of a breach of the agreement on his own part, the latter shall sell the land, and that the purchaser at such sale shall acquire the legal title, relieved of the lien, as of the date of the execution of the mortgage. A subsequent mortgagee knows of this relation between the parties, and what he agrees to accept as a security for his money is a claim upon the surplus of the proceeds of the first foreclosure sale beyond the prior debt. He has no estate in the land itself, nor any lien upon the land, except subject to the prior lien; that is, he has a right to be paid out of the excess. This is, in effect, a right to redeem, and incidentally—if made a party to a foreclosure suit—a right to defend by pleading the Statute of Limitations, or the invalidity in whole or in part of the plaintiff's claim, or that it is paid. These are not, however substantive and primary defences, but grow out of his right to redeem—his right to have the fund proceeding from the sale as large as possible. Hence, whenever he files a bill to redeem the former mortgage, or to redeem the former and to foreclose his own, he may allege and show that the claim of the prior mortgagee has been exaggerated, or any other kindred fact which will increase the fund.

"Of course, a mortgagee may also be entitled to relief by showing that an apparent prior incumbrance is fraudulent or

not supported by any consideration, and no decree in a proceeding to which he was not made a party can deprive him of that right. But no suggestion is made by the pleadings or proof herein that the Moss claim was not a valid and just one, or that the decree in his favor was for a greater amount than was actually due. A junior mortgagee possesses the right to extinguish the senior incumbrance. By whatever mode he may seek to exercise this right, it operates a satisfaction of the claim of the prior mortgagee and a release from his lien. When Catherine Hayes' own debt became due she was entitled to redeem the prior mortgage, and to foreclose the equity of redemption. I use this form of expression for convenience. But a second mortgagee never was compelled to institute two separate actions to secure this result. In England, where the practice is to foreclose strictly, the mode is by bill to redeem from the first mortgage and requiring the junior incumbrancers to redeem from both the prior mortgages or be foreclosed. But here, the practice has been to sell to satisfy the mortgage, whether it be a first or subsequent mortgage, and the prior incumbrance is protected by the application of sufficient of the proceeds in the first instance to pay his debt and costs. (13 Abbott, 39.) There is no reason in such case why the offer to redeem should be made in the bill in terms, since the very object of the bill is to redeem out of the proceeds of the sale.

" No doubt a subsequent mortgagee may bring his action against the mortgagor, without making the prior incumbrancer a party, but any decree in the suit cannot affect the prior incumbrancer, whose rights are paramount. But if the junior mortgagee shall bring his senior into Court, shall he be permitted to ignore his claims as senior mortgagee ? The right then of the plaintiff as against the purchasers at the Moss-foreclosure sale, was a right to redeem.

"A suit of foreclosure, as against younger mortgagees, is a suit to cut off the right of redemption; and as the plaintiff was not made a party defendant by Moss in the former suit the right to redeem was unaffected by the decree and sale

under it. (22 Cal. 32; 14 Id. 559; Story's Eq. 196, note; Calvert's Parties in Eq. 132, 137; 11 Cal. 314; 10 Id. 547; 3 John. Ch. 459; 4 Id. 606; 47 Barb. 91; 10 N. Y. 356; 31 Id. 157; 1 Paige, 284.)

"It is not necessary at this time to pass on any of the other questions presented. New trial granted." These views, in my opinion, correctly define the law; and I could add nothing to the force and clearness with which they are expressed.

On the argument some questions were raised in respect to the basis on which the plaintiff would be entitled to redeem, as, for example, whether the defendants would be entitled to receive only the purchase price paid for the lands in contest by Moss at the foreclosure sale, with interest, or whether there should be paid the full amount of the judgment on foreclosure. These questions are not before us on this appeal, not having been passed upon by the District Court; if we were to decide them in advance of the action of the District Court we should be exercising, *pro hac vice*, original and not appellate jurisdiction. But the defendants claim that the plaintiff has released Brenham, the mortgagor, from all personal liability for the debt secured by the mortgage to Catherine Hayes, and is, for that reason, entitled to no relief whatever in this action. The argument is that the defendants are entitled to pay off the junior mortgage, and thus release the land from this incumbrance; and that upon such payment, they would be entitled to be subrogated to all the rights which Catherine Hayes originally had against Brenham, including the right to hold him personally liable for any deficiency that might remain after exhausting the mortgage security, and that, inasmuch as the plaintiff has released Brenham from this liability, he has thereby, *pro tanto*, defeated this right of subrogation, and cannot for that reason subject the mortgage premises to the lien of said mortgage. This argument assumes that on payment of the junior mortgage the defendants would be entitled, as a matter of law, to be subrogated to all the rights which the junior mortgagee ever had against the mortgagor. But this proposition cannot be maintained.

The purchasers at the foreclosure sale sustained a two-fold relation to the junior mortgage: First, as having acquired the legal title of the mortgagor; and second, as having become in equity, the assignees of the debt secured by the first mortgage, or at least so much thereof as was satisfied by the foreclosure sale. In either capacity, if they should select to discharge the debt secured by the junior mortgage, the most that they could claim, if entitled to any relief of that character, would· be the right to be subrogated to such rights as the junior mortgagee had at the time of the payment. As assignees in equity of the debt secured by the prior mortgage, they would be under no obligation or necessity to discharge the junior mortgage for the protection of their rights, inasmuch as the first mortgage, by operation of law, had priority over the second; and therefore, if they voluntarily discharged the second mortgage, being under no necessity to do so, they would be simply removing an incumbrance, which could not impair or affect their rights as assignees of the prior mortgage debt; and subrogation is only allowed as a matter of right in such cases, when a party is forced, for the protection of his own interests, to discharge an incumbrance which might otherwise jeopardize them. It is evident that, as having succeeded to the legal title of the mortgagor, they would not be entitled to subrogation on payment of the junior mortgage. On acquiring the title of the mortgagor, they took it *cum onore*, and as his successors in interest, whether by a voluntary conveyance or at a forced sale, they took the property subject to the incumbrance of the junior mortgage, and, so far as their rights are derived from the mortgagor by means of the foreclosure sale, they stand in his shoes; that is to say, the legal estate acquired from the mortgagor remains in their hands, subject to the junior mortgage, precisely as it was before; and if they have any right of subrogation, it proceeds, not from the fact that they have succeeded to the rights of the mortgagor, but that they are the assignees in equity of the debt secured by the first mortgage, which is kept alive for their protection

Points decided.

But, as we have already seen, as such assignees, if they would be entitled to subrogation at all, on which point I express no opinion, it would only be to such rights as the junior mortgagee had at the time of the payment of his mortgage debt. I do not, therefore, deem it material whether or not the plaintiff had released Brenham from his personal liability.

The defendants insist that the mortgage to the plaintiff is void, because, as they claim, the proofs show that no promissory note was ever executed or delivered by Brenham to Catherine Hayes, as recited in the mortgage, but I deem it useless to discuss that question, inasmuch as the cause is pending in the Court below, and that Court, since the new trial was granted, has not passed upon this point. The same remark will apply as to the question raised in respect to the necessity of having all the parties in interest before the Court before any decree can be rendered for a sale of the mortgaged premises, which question is yet pending and undecided in the Court below.

The order granting a new trial is affirmed.

WALLACE, J., having been of counsel in the Court below, did not sit in this case.

SPRAGUE, J., expressed no opinion.