ALBERT PETERSON and others *vs.* HILDA WEBBER and others.

June 23, 1891.

**Redemption from Mortgage—Implied Trust—Evidence.**—Upon examination of the plaintiffs' proofs in this action, which was brought to compel the defendants to allow the plaintiffs to contribute and to share and participate in the rights and benefits acquired in certain real property, through redemption from a mortgage foreclosure sale, it is *held,* that the court properly dismissed the case when plaintiffs rested.

Appeal by plaintiffs from an order of the district court for Hennepin county, *Lochren,* J., presiding, refusing a new trial after a dismissal ordered at the trial. The action was brought to have a certain assignment of a certificate of foreclosure sale, and redemptions from that sale (stated in the opinion) adjudged to have been made in behalf of their cotenant, the defendant Hilda Webber, as the real

person in interest, and to have plaintiffs adjudged to be owners in fee of the property upon their paying to defendant Webber their reasonable proportion of her outlays.

*Hart & Brewer*, for appellants.

*J. O. Pierce* and *H. M. Parker*, for respondents.

Collins, J. The plaintiffs herein are the minor children of one Peterson, who died intestate, and the defendant Mrs. Webber was formerly his widow, and is the plaintiffs' mother. There are many independent facts connected with the transaction, but very few need be specially mentioned. The real property belonging to Peterson's estate—200 acres of land, of which 80 was a homestead—was distributed by decree of the probate court, in May, 1886, in accordance with the provisions of the statute then in force. All thereof had been mortgaged by Peterson in his lifetime, and after he died this mortgage was foreclosed, the year of redemption expiring January 27, 1890. Just prior to the day last mentioned, the interest of the plaintiffs in the 120 acres outside of the homestead had been sold by order of the court to one Baillif. He at once placed two mortgages upon it, one to McLeod, the second to Ray; thus putting both of these persons in position to redeem from the foreclosure sale. He then conveyed his interest in the 120 acres to defendant Davenport. The latter had previously purchased and procured an assignment to himself of the sheriff's certificate of foreclosure sale. Eight notices of intention to redeem from this sale were filed, among them one by the mortgagee McLeod, another by the mortgagee Ray, and another, the eighth in numerical order, by the defendant Parker, who held a judgment against Mrs. Webber. McLeod redeemed on February 20, 1890, and immediately transferred such rights as he thereby acquired to Davenport. On February 25th Mrs. Webber sold all of her interest in the premises to Davenport, the conveyance being made, at the latter's request, to defendant Cole. The mortgagee Ray made redemption, in form at least, on March 6th, and on the next day the premises were duly redeemed by Parker as a judgment creditor of Mrs. Webber. It is not disputed that up to the 25th day of February, the day on which Mrs. Webber conveyed to Cole at Davenport's request, Parker had been her legal adviser. He advised her against the sale

to Davenport, as against her interests. She declined to abide by his advice, and the relation of attorney and client then ceased. It is also conceded that Mrs. Webber and defendant Parker, as her attorney, had applied to Davenport some time before the 27th of January for a loan of money sufficient in amount and for the purpose of redeeming the land from the foreclosure sale, and that the latter obtained an assignment of the sheriff's certificate in Mrs. Webber's interest, and in pursuance of an agreement to loan or to furnish money to her with which to redeem and perfect her title to the premises. It is further conceded that the redemption by McLeod, and the transfer of his rights as a redemptioner to Davenport, were in accordance with the plan agreed upon by Mrs. Webber, her attorney Parker, and defendant Davenport, through which she was to hold the land. After all these steps had been taken, and the property redeemed in her interest, she abandoned the project, and sold out to Davenport.

We have stated that redemption, in form at least, was made by Ray, as a mortgagee, on March 6th. There is no claim that this redemption was made in the interest of either Davenport or Mrs. Webber, but, to avoid its effect under such circumstances, the appellants insist that it was inoperative, because, as they assert, it was not made in time. We need not discuss whether the act was or was not performed within the statutory period, or what the result might be, admitting that the time had expired, in the absence of an objection, on this ground, made by Davenport, from whom Ray redeemed, or from Parker, who stood next to him in the line of redemptioners; for a determination of the case does not depend upon the redemption made by Ray, but rather upon that made subsequently by Parker as a judgment creditor. Nor do we need to consider the respondents' claim that, in respect to the homestead estate, in which Mrs. Webber held a life-estate merely,—that being the only part of the land in which the plaintiffs pretend to retain an interest,—there existed no fiduciary relation between plaintiffs and their mother which would prevent her from acquiring an outstanding title or an interest adverse to them. The character of the relations which exist between the surviving husband or wife holding a life-estate in the homestead,

and the heirs who have the fee subject to the life-estate, we leave for future adjudication, should occasion require.

To maintain this action, laying aside any consideration as to the character of the relations which existed between the plaintiffs and their mother, who they insist was a tenant in common, and dropping all question as to the effectiveness of the Ray redemption, it was incumbent upon the plaintiffs to prove that in all of the steps taken by Davenport, up to the time that he purchased her interests, the conveyance being to Cole, he was acting for her under an agreement, expressed or implied, that he should obtain the title through these various claims, and then convey to her. If this was the fact, the deed to Cole could not and does not stand in the way of plaintiffs' recovery. It was equally as essential that the plaintiffs should prove that the latest redemption, made by Parker, was made under similar circumstances. When made, if Parker was in no manner bound to either Davenport or Mrs. Webber,—was redeeming independent of them,—his act cannot be considered as inuring to the benefit of either, and hence plaintiffs have no claim whatsoever upon him. He has become the absolute owner of the entire property by virtue of his redemption from the foreclosure sale and from prior redemptioners. The plaintiffs made little or no effort to show that the Parker redemption was under any agreement with Davenport or Mrs. Webber. They argue, in effect, that such an agreement can be inferred from the circumstances; and that, as Parker was Mrs. Webber's attorney when he redeemed, his act of redeeming must be declared to have inured to her benefit. It is also intimated that the Parker judgment was obtained under suspicious circumstances, and that the fact may be considered when passing upon the character of his redemption. It is very evident that, whatever conclusion might be drawn from the testimony in respect to Davenport's connection with the efforts made by Mrs. Webber to redeem, there was no evidence from which it could be inferred that Parker had entered into an agreement with either of these persons to use his right of redemption for their benefit. He denied that any such agreement existed or had ever been talked of. It was also established by the testimony that when Mrs. Webber conveyed her interests to Cole, Feb-

ruary 25th, the relation of attorney and client, previously existing between Parker and Mrs. Webber, ended. Thereafter he was but a judgment creditor, having a right to redeem within the time prescribed by statute. This right he exercised March 7th, and in so doing deprived Davenport of all interests which he had accumulated in the property. If there was a collusive agreement between these persons, whereby Parker's rights have been, or are to be, transferred to Davenport, it cannot be inferred from the fact that Parker had been the attorney for Mrs. Webber in these matters, which was well known to Davenport, and that his judgment was obtained while he was such attorney. There was nothing else in the proofs to sustain such a view. The district court was correct when ruling on defendants' motion to dismiss.

Order affirmed.