[Civil No. 2574. Filed December 5, 1927.]

[261 Pac. 633.]

B. H. METCALF, Appellant, v. PHOENIX TITLE AND TRUST COMPANY, a Corporation, Appellee.

Messrs. Sloan, Holton, McKesson & Scott, for Appellant.

Messrs. Armstrong, Lewis & Kramer, for Appellee.

LOCKWOOD, J.—Prior to April 20th, 1920, Angus McAlpine and Lillian McAlpine, his wife, were the owners of lot 8, block 79, of Globe townsite, located

in Gila county, Arizona. At that time there were two mortgages on said property given by the McAlpines to one H. H. Pratt, to secure notes totaling $3,500. On April 20th, 1920, the McAlpines gave a mortgage on several parcels of real estate, including lot 8, block 79, to the Hassayampa Creamery Company, to secure a $10,000 note executed by them in favor of said company. This last note and mortgage were, on the twenty-first day of April, 1920, assigned by the creamery company to the Phoenix Title & Trust Company, a corporation, hereinafter called appellee, as collateral security for an indebtedness of the creamery company to appellee. On June 8th, 1922, a judgment of foreclosure was entered in the superior court of Gila county on the Pratt mortgages. Neither the creamery company nor appellee, which then held the $10,000 note and mortgage as collateral security, was made a party to these foreclosure proceedings. At the sale under the foreclosure Pratt became the purchaser of the property for the amount of his judgment, and immediately thereafter went into possession of the premises. On January 19th, 1923, the creamery company, having previously given notice of its intention to redeem from the sale as a subsequent lienor under its mortgage, paid to the sheriff the amount necessary to redeem, and obtained a sheriff's deed to the property. The next day the creamery company conveyed the title held by it to B. H. Metcalf, hereinafter called appellant. Metcalf went into possession under the deed from the creamery company, and has remained in possession ever since. On May 1st, 1924, the $10,000 note and mortgage aforesaid, together with other collateral which had been assigned by the creamery company as additional security for the debt owed by it to appellee, was sold by the latter and bought in by it at the sale. Part of the land covered by the $10,000 mortgage was located in

Maricopa county, and part, including the parcel involved in this appeal, was located in Gila county, so appellee, under the provisions of paragraph 4114, Revised Statutes of Arizona of 1913, Civil Code, brought its suit for foreclosure in Maricopa county. In said suit the McAlpines, the creamery company, Metcalf and a number of other parties were named as defendants. The complaint set up the execution of the note and mortgage, and its assignment to appellee, and prayed for judgment against the McAlpines and the creamery company for the amount of the note and for foreclosure of the mortgage as against all of the defendants.

Metcalf answered, setting up that he claimed to be the owner in fee simple, clear of any lien or encumbrance by reason of the mortgage sued upon in the complaint, of the premises in question, and as a special defense set up the foreclosure under the Pratt mortgage, the redemption by the creamery company, and that he had furnished the money for such redemption under an agreement that the creamery company should convey the title to the lands to him, and that, as consideration therefor, the creamery company should have the right to purchase the property from him on the payment of the amount paid by him for the redemption within a reasonable time; that said agreement with the creamery company was with the knowledge and approval of appellee; and that the creamery company, although a reasonable time had elapsed, had not purchased the property from appellant as set forth in its agreement that it might. His prayer for relief was that appellee take nothing as against him, and that the title to the property be quieted in him.

There was some oral evidence offered by appellee, but none of it material to the issues of this appeal, except that it was established the assignment of the $10,000 note and mortgage was for collateral pur-

poses only, and that these securities, with others also held for collateral security of a debt from the creamery company to appellee, were sold by appellee, and bought in by it some time in 1924. Appellant offered as evidence the sheriff's deed to the creamery company, the deed from it to him, the judgment in the Pratt foreclosure case, and a certified copy of the complaint and answer in a certain suit pending in Gila county, being case No. 4933, entitled *"Phoenix Title & Trust Company* v. *Hassayampa Creamery Company et al."*

The first three documents need not be considered by us further than to state that they showed on their face a judgment of foreclosure authorizing the sheriff's sale of the premises in question, the redemption by the creamery company according to the statute, the sheriff's issuance of a deed to it covering the property, and its deed conveying all its title therein to appellant. The complaint in suit No. 4933 aforesaid set up the various transactions recited herein, and alleged that, although the deed between the creamery company and Metcalf on its face purported to be an absolute conveyance, it was in fact by the agreement of the parties a mortgage on the premises redeemed to secure the repayment by the creamery company to Metcalf of the amount of money he had advanced to redeem the property. Metcalf answered that the agreement between himself and the creamery company was ''that defendant should redeem said lands from said sheriff's sale, and should pay to said sheriff the full amount necessary for redemption and whereby it was agreed that the title to said lands should be conveyed by said Hassayampa Creamery Company to the defendant B. H. Metcalf, and whereby it was further agreed that, as consideration for such conveyance, the said Hassayampa Creamery Company should have the right and option to purchase from the said

B. H. Metcalf the said premises above referred to, by the payment to him of the full amount paid by him for such redemption, said option and privilege to be exercised within a reasonable time after said conveyance.''

Appellant further alleged that appellee had full knowledge of the terms of such agreement and approved thereof, and that, although a reasonable time had elapsed, the amount paid by him to the sheriff for the redemption had not been repaid to him.

The trial court, after considering the matter, filed its findings of fact and conclusions of law. The findings set forth in substance the facts above stated, and also contain the following clause:

''The court further finds that on or prior to January 19th, 1923, the Hassayampa Creamery Company borrowed from defendant B. H. Metcalf the sum of $4,861.59 to pay to the sheriff of Gila county to effect said redemption under an agreement with said Metcalf whereby it was understood and agreed that the Hassayampa Creamery Company, in order to secure the repayment of said sum so loaned it by said Metcalf within a reasonable time, would give to said Metcalf a mortgage on said real estate so redeemed; that pursuant to said agreement the defendant Hassayampa Creamery Company did on January 20th, 1923, execute, acknowledge, and deliver to the said B. H. Metcalf a deed, by the terms of which it granted, bargained, sold, and conveyed said premises to the said Metcalf, which said deed was recorded in the office of the recorder of Gila county on April 28th, 1923, in book 37 of real estate deeds at page 114; the court further finds that, while said deed on its face purported to be an absolute conveyance of said real estate from the Hassayampa Creamery Company to said B. H. Metcalf, it was understood and agreed between the parties thereto, and it was in fact, a mortgage for the purpose of securing the payment within a reasonable time to the said Metcalf of the sum of money by him as aforesaid loaned the Hassayampa Creamery Company for the

purpose of, and by said company used in, effecting the redemption of said real estate from said sale.''

As conclusions of law from the facts above set forth which were embraced in the findings and the specific finding just quoted, the court held that the redemption by the creamery company was for the use and benefit of appellee herein; that the title it acquired by virtue of said redemption and the sheriff's deed was taken and held by the creamery company as trustee in trust for the appellee; that the deed from the creamery company to appellant was as a matter of law a mortgage to secure the payment of the amount loaned to the creamery company by him to redeem from the foreclosure; that, as the creamery company held the title to the premises in question as trustee for the appellee, the latter was the equitable owner thereof, and therefore not entitled to foreclosure of the mortgage in question, and judgment was rendered to the effect, among other things, that the premises in question were held by the creamery company as trustee for the use and benefit of the appellee, and that it was the equitable owner thereof, and that its complaint for the foreclosure of the mortgage was dismissed. Appellant filed a motion for a new trial, and, after the same was overruled, appealed to this court.

There are three assignments of error. The first is that the adjudication of the title as between the creamery company, the appellant, and appellee was not warranted by the pleadings, and is not within the issues of the case. The second is that the court erred in finding that the deed from the creamery company to appellant was in effect a mortgage to secure the payment of money loaned by appellant to the creamery company to make the redemption set forth herein, because the finding is not sustained by the evidence. The third is that the court erred in adjudging the legal title is held by the creamery

company as trustee for appellee, and that the latter is the equitable owner thereof, for the reason there is no evidence in the record to sustain such judgment. We will consider these assignments in their inverse order.

It is evident the learned trial court believed that the redemption of the premises by the creamery company as the owner of the junior mortgage inured by operation of law to the benefit of appellee, its assignee, and that whatever title was acquired by the creamery company passed by such operation of law equitably to appellee when all rights of the creamery company in the junior mortgage became the property of appellee. We think this conclusion, under the facts of the particular case, was erroneous. The purchaser of land at a valid foreclosure sale acquires all the interest of the mortgagor to the premises. Par. 1373, Rev. Stats. Ariz. 1913, Civ. Code. Therefore, when Pratt purchased the premises in question at the foreclosure sale, he acquired the title which the McAlpines had. Since the creamery company and appellee were not made parties to the Pratt foreclosure sale, their rights under the junior mortgage were not affected by the foreclosure and sale. *Williams* v. *Williams,* 32 Ariz. 164, 256 Pac. 356; *Johns* v. *Wilson,* 6 Ariz. 125, 53 Pac. 583; *Carpentier* v. *Brenham,* 40 Cal. 221.

Under the statute, the creamery company, being the legal owner of the junior mortgage, had the right to redeem. Par. 1374, Rev. Stats. Ariz. 1913, Civ. Code. This right it exercised, and therefore succeeded to all the rights of the foreclosure purchaser. *Eldridge* v. *Wright,* 55 Cal. 531; *Horton* v. *Maffitt,* 14 Minn. 289 (Gil. 216), 100 Am. Dec. 222.

When, therefore, the creamery company redeemed the property in question from Pratt, it acquired all the interest which the McAlpines had thereto. If at that time it had been, not only the legal holder

of the junior mortgage, but also its equitable owner, under the familiar doctrine of merger, the two rights would have become one, and it would have been the absolute owner of the property, free from all encumbrance so far as this record shows, but, since it had assigned its mortgage, even though only as collateral security, appellee had a beneficial interest in the mortgage, and under the familiar rule such redemption inured to the benefit of appellee. *Manning* v. *Markel,* 19 Iowa 103; *Potter* v. *Skiles,* 114 Ky. 132, 70 S. W. 301, 71 S. W. 627; *Morava* v. *Bonner,* 205 Ill. 321, 68 N. E. 707; *Witham* v. *Blood,* 124 Iowa 695, 100 N. W. 558; *Peterson* v. *Webber,* 46 Minn. 372, 49 N. W. 125.

This last doctrine is undoubtedly the law, but it is in the interpretation thereof that we think the lower court erred. Apparently it interpreted the words "inure to the benefit of" to carry the same meaning as "transfer the equitable title to." The entire proceeding is an equitable one, and should be governed by the rules of equity. The only interest which appellee had under the mortgage at the time of the redemption, at most, was to subject the property to the payment of the $10,000 note secured by the mortgage thereon, if the creamery company defaulted in its debt. If that right was secured to it through the redemption of the property, the creamery company had, so far as its assignment of the mortgage was concerned, done all that was required of it. Such being the case, we think that the trial court extended the doctrine that, when an assignor acquires a title, he does it for the benefit of his assignee beyond its limits. The true rule is that, when an assignor acquires title, he does it for the benefit of his assignee *only to the extent necessary to protect his assignment.* Nor does the doctrine of merger apply when it is the evident interest and

intention of the party who holds the two titles to maintain them separate and distinct. 27 Cyc. 1379.

In the present case the creamery company showed plainly by its deed to Metcalf that it did not intend its title acquired by redemption and its title under the junior mortgage should merge. We are therefore of the opinion that, at the time it redeemed the property at the sheriff's sale, its title so acquired inured to the benefit of the assignee to the extent only that the junior mortgage held by the assignee became a first mortgage lien upon the property, and that the creamery company was both the legal and equitable owner of the title, subject to the lien just mentioned, and, as such owner, had the right either to convey or mortgage it to appellant herein. Such being the case, so far as the decree to be rendered in this suit was concerned, it was immaterial as to whether the deed to Metcalf should be construed as an absolute deed, subject to the mortgage of appellee, or as a second mortgage on the property subordinate to the rights of appellee, with the title still in the creamery company. It is true that if, after the foreclosure of the mortgage, there is a surplus arising from the sale or a redemption made therefrom, and appellee also has a general judgment against the creamery company arising out of some other cause of action, the question might become of importance, but that should be determined in other proceedings, and not in the one at bar.

The trial court should have rendered judgment in favor of appellee for foreclosure of the $10,000 mortgage in the usual manner, leaving the question of the nature of Metcalf's title to be determined in any other proceedings which might be proper.

The judgment is reversed, and the cause remanded to the superior court of Maricopa county, with instructions to render judgment in favor of appellee for a foreclosure of the note and mortgage in ques-

tion, and for such further proceedings as may not be inconsistent with this opinion.

ROSS, C. J., and McALISTER, J., concur.