[Civil No. 1619.   Filed December 16, 1919.]

[185 Pac. 638.]

# SONORA BANK AND TRUST COMPANY, a Corporation, Appellant, v. COMPANIA AGRICOLA DEL RIO MAYO, S. A., a Mexican Corporation, Appellee.

1. JUDGMENT—CONFORMITY TO PLEADING NECESSARY.—It is a fundamental rule of the code system of pleading, as well as at common law, that the judgment must follow the pleadings; so a litigant cannot proceed upon one cause of action in his complaint, and recover upon a distinct cause of action.

2. JUDGMENT—IN ACTION ON CONTRACT NOT IN CONFORMITY TO PLEADING.—In action against bank for breach of its contract of sale of Mexican silver money in consideration of plaintiff depositor's gold balance with it, where the bank's answer conceded there was a contract for sale of Mexican money, but claimed that the money sold was Mexican bank bills, and not Mexican silver, it was error to give judgment against the bank for the amount of plaintiff's deposit, on the theory that there was no meeting of minds and no contract of sale; no equitable rights being claimed or equitable remedy invoked, as by demand for reformation of the contract, and neither party disaffirming the contract.

3. JUDGMENT—RECOVERY ON DIFFERENT THEORY FROM THAT ON WHICH COMPLAINT PROCEEDS.—Where a complaint proceeds on one theory, recovery cannot be allowed on another.

4. PLEADING—FORMAL PARTS NOT CONTROLLING IN CONSTRUCTION OF COMPLAINT.—In construing a complaint to determine on what theory it is drawn, all averments will be considered; but neither formal parts nor isolated averments of fact will be deemed controlling as against the case substantially made by the general character of the facts alleged.

5. PLEADING — CONSTRUCTION.—Where a complaint contains words which, if properly arranged, may state two causes of action, it will be construed as stating the one principally intended.

6. EVIDENCE—PAROL EVIDENCE RULE.—The general rule is that parol evidence is inadmissible to explain, vary, alter, or add to the terms of a written contract.

6. On the question of general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 **L. R. A.** 270.

7. CUSTOMS AND USAGES—EVIDENCE OF CUSTOM TO EXPLAIN CONTRACT
   ADMISSIBLE.—Where a depositor, who had a gold balance in a
   United States bank, contracted with the bank to have the same
   credited in Mexican money or silver pesos, and the parties used
   the term "moneda Mexicana pesos plata" in communications which
   were written in Spanish, *held* that, where the depositor contended
   that he was sold actual silver money, and the bank that he was
   to be paid in Mexican bank bills, evidence of the customs of
   brokers in such exchanges is admissible, on the theory that par-
   ties who contracted on a subject concerning which known usages
   prevail, by implication incorporate them into their contract.

APPEAL from a judgment of the Superior Court
of the County of Santa Cruz. S. L. Pattee, Judge.
Reversed and remanded.

### STATEMENT OF FACTS.

Compania Agricola del Rio Mayo, S. A., a Mexican
corporation, engaged in agricultural business, and
hereinafter designated as "the Company," brought
suit in the superior court of Santa Cruz county, Ari-
zona, against the Sonora Bank & Trust Company, a
banking corporation, of Nogales, Arizona, hereinafter
designated as "the Bank," for the sum of $150,287.75,
in Mexican silver dollars, with interest, or the equiva-
lent in lawful money of the United States. On Sep-
tember 12, 1914, the company had on deposit with the
bank, at Nogales, Arizona, a large amount of money,
part of which was in Mexican money and part in
American money. The amount of American money
so on deposit was $40,577.69. On September 12, 1914,
the company telegraphed the bank as follows:

"Telegraph us at what rate you can credit us in
Mexican money our gold balance."

To this telegram the bank replied by telegraph, on
September 14, 1914:

"We will credit your gold balance in silver at
twenty-seven. Immediate acceptance."

---

7. Peculiar signification of word in locality where instrument was
executed as admissible in evidence, note, **Ann. Cas.** 1916C, 655.

On receipt of the bank's reply, just quoted, the company again telegraphed the bank on September 15, 1914:

"Your telegram to-day. We understand twenty-seven cents gold for each silver peso. We accept this rate and please credit us in silver the equivalent of forty thousand five hundred seventy-seven dollars sixty-nine cents, which is our balance."

This last telegram the bank received on September 15, 1914, and on the following day wrote to the company as follows:

"Nogales, Arizona, September 16, 1914.
"Compania Agricola del Rio Mayo, Alamos—

"Dears Sirs and Friends: We received the following telegram from you yesterday: 'Your telegram to-day. We understand twenty-seven cents gold for each silver peso. We accept this rate and please credit us in silver the equivalent of forty thousand five hundred seventy-seven dollars sixty-nine cents, which is our balance.' And in conformity with your instructions we have credited you the amount of $150,287.75, Mex., which at the rate of 27 cents agreed upon, equals to $40,577.69 gold, which we have charged you, and we advise you that the balance in your favor in gold is not that sum, but the sum of $41,327.69, but we suppose it consists in that there must be some of your drafts not yet presented.
"Your truly,
"SONORA BANK & TRUST CO.,
"C. RIVERA,
"Cashier."

About December 1, 1914, the company issued to Mr. German Bley its check against the bank for the sum of $450, payable in Mexican silver pesos, or in bank bills of the Banco de Sonora. This check the bank refused to pay, and stated its reasons for refusing in a letter of December 3, 1914, as follows:

"Nogales, Arizona, December 3, 1914.
"Compania Agricola del Rio Mayo, Alamos, Sonora—
"Dear Sirs and Friends: To-day there has been presented for payment by Mr. German Bley, of this city,

your draft against us No. M7, for the amount of $450, with the annotation that it is payable in 'Mexican silver pesos, or in bank bills of the Banco de Sonora,' and we beg to call your attention to the fact that your drafts against us are payable in bank bills, without specifying as to what kind of paper, and which pray take notice.   Always at your orders, we remain,

"Yours very truly,

"SONORA BANK & TRUST CO.,

"W. C. WINEGAR,

"A. Sec."

On December 21, 1914, the company answered this letter as follows:

"Alamos, December 21, 1914.

"Sonora Bank & Trust Co., Nogales, Arizona—

"Dear Sirs: We have received your favor of the 3d inst., in which you advise us that our drafts against you are payable in Mexican bank bills, without specifying kind of paper.   In response we beg to say that we do not accept that our drafts against you are payable in bank bills, as our deposit with you is: Mexican silver pesos, which is the kind of money for which we sold you our dollars, as it is expressly stated in your telegram of September 14, confirmed in letter by mail, and our telegram of said date.

"If for some reason you cannot pay our drafts in Mexican silver pesos, you must credit us with the difference between the value of the bills in which you make the payment of our drafts and the Mexican silver pesos which we have on deposit with you.   In other words, you must not charge us your payments in bank bills at par with coins of Mexican silver, which we have in your possession, and with the corresponding discount.   We believe that, upon your revising the telegrams and letters above mentioned, you will see that we cannot but make our drafts in the manner we have done.   Awaiting your answer, we remain,

"Yours very truly,

"COMPANIA AGRICOLA DEL RIO MAYO,

"MIGUEL C. URREA."

On February 25, 1916, the company made formal demand upon the bank for $150,287.75, Mexican silver

pesos (dollars), which demand the bank refused. The complaint alleges that the letters and telegrams quoted constituted a contract and agreement between the parties, and that by the terms of the contract and agreement the company had sold and conveyed to the bank the sum of $40,577.69, lawful money of the United States, in exchange for $150,287.75, Mexican silver dollars or pesos, and prayed for judgment for $150,287.75, Mexican silver pesos (dollars), and interest, or its equivalent in American money, and for such other and further relief as might be proper in the premises.

The bank filed an answer, admitting the deposit of gold, or American money, at a time prior to the contract, and sending and receiving the telegrams and letters as alleged, but denied liability for the payment of Mexican silver pesos (dollars), and contended that the letters and telegrams constituted an exchange of American money into Mexican bank bills, and in support of this allegation alleged that by the custom and usage prevailing in Mexico and on the border between the United States and Mexico, in September, 1914, the terms "moneda Mexicana," "plata," "pesos," "pesos plata," meant bank bills or paper money, and that such custom and usage was known to both the company and the bank at the time the telegrams and letters were exchanged, and that the bank was ready and willing to pay to the company, or its order, $150,287.75, pesos (dollars), in Mexican bank bills.

The company filed a reply, denying such custom and usage, and denying that said terms meant bank bills.

The case was tried by the court without a jury, and much conflicting testimony was introduced as to the meaning of the terms "moneda Mexicana," "plata," "pesos plata," and "billettes de banco." The court filed written findings of fact, in which it found that the minds of the parties never met as to

XXI Ariz.—6

the agreement, and that no contract of exchange had been entered into between them. Based upon this finding of fact, the court found that the parties effected nothing by their attempted contract of exchange, and that the deposit of the company remained intact in the bank, having been neither increased nor diminished by the attempted exchange. The court thereupon entered judgment that the company recover from the bank the amount of the original deposit, $40,577.69, in lawful money of the United States, together with various items of interest. The bank appealed. The company also appealed.

Messrs. Duffy & Purdum, Messrs. Armstrong & Lewis and Mr. R. William Kramer, for Appellant.

Messrs. Barry & Barry and Mr. S. L. Kingan, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— The particular question presented for decision upon this appeal is whether the trial court departed from the well-settled rule that recovery must be had in accordance with the claim made in the complaint, in rendering judgment in behalf of the company for $40,577.69, lawful money of the United States.

It is a primary and fundamental rule in the Code system of pleading, as well as at common law, that the judgment shall be "*secundum allegata et probata.*" 9 Cyc. 748. "Any . . . departure from this rule is sure to produce surprise, confusion, and injustice." *Day* v. *Town of New Lots,* 107 N. Y. 148, 13 N. E. 915. A litigant cannot proceed upon one cause of action in his complaint and recover upon another distinct cause of action. This would be to ensnare his adversary. *Southwick* v. *Bank,* 84 N. Y. 420. The complaint in the case sets up a claim for $150,287.75, Mexican silver dollars, with interest, or its equivalent in lawful money of the United States. It is clearly

and distinctly alleged that the company by virtue of a contract evidenced by certain telegrams and letters, purchased from the bank $150,287.75, in Mexican silver dollars, for the price of $40,577.69, lawful money of the United States, and that the bank on demand had refused to deliver the Mexican silver dollars.

The answer of the bank concedes that it entered into a contract with the company for the sale of Mexican money, but claims that the bank by the contract sold to the company Mexican bank bills. At the time the parties entered into the alleged contract Mexican bank bills were quoted around 27 cents gold for each paper dollar, and Mexican silver dollars were quoted around 44 cents gold.

Here a distinct and narrow issue was made up by the pleadings, to wit, a claim based upon a contract of purchase and sale of $150,287.75, Mexican silver dollars, a denial that the contract was for the purchase of Mexican silver dollars, coupled with an averment that the contract was for the purchase and sale of Mexican bank bills. The bank had the right to expect that upon the trial such issue, and that only, would be tried. The bank was under no obligation to prepare to meet the other and distinct issue that the company had on deposit with it the sum of $40,577.69, lawful money of the United States, which upon demand the bank had refused to pay to the company, and yet upon this distinct and separate issue the court gave judgment in favor of the company and against the bank for said sum of $40,577.69, upon the theory that the minds of the parties never met, and that there was no contract of sale and purchase between the parties. The company, having based its claim and tried the case upon an alleged express contract, was bound thereby, and it was not entitled to recover upon any other theory. *Sanders* v. *Hartge,* 17 Ind. App. 243, 46 N. E. 604; *Union St. Ry. Co.* v. *First Nat. Bank of Union,* 42 Or. 606, 72 Pac. 586,

73 Pac. 341; *Ingram-Dekle Lumber Co.* v. *Geiger,* 71 Fla. 390, Ann. Cas. 1918A, 971, 71 South. 552. The respective rights of the parties depended upon the terms of the contract, if one existed, and if no contract existed the company was not entitled to any relief in the particular suit. The judgment, therefore, was a clear departure from the pleadings.

Obviously, the trial court placed the wrong construction upon the complaint when it concluded that the action was one to recover $40,577.69, which the company had on deposit with the bank. True, it is alleged in the complaint that the company had that amount on deposit with the bank prior to the making of the contract; but clearly that is an allegation of matter of inducement only, and in no manner changes or alters the well-defined issue made up by the pleadings. This allegation, and other secondary or subsidiary allegations appearing in the complaint, cannot be treated as stating a cause of action by a depositor against a bank for the recovery of a deposit, when the complaint, as a whole, proceeds upon the definite, clear, and certain theory that the action is one based upon a contract of purchase and sale. "In construing a declaration to determine upon what theory it is drawn, all the averments will be considered, and neither the formal parts, nor isolated averments of fact, will be deemed controlling as against the case substantially made by the general character of the facts alleged." 31 Cyc. 84. We are not disposed to charge the complaint with the vice of having a double aspect; but, if we did, still we would be required to construe the complaint as stating the cause of action principally intended. "Where a complaint contains words which, if properly arranged, might state two causes of action, it will be construed as stating only the one principally intended." *Santa Fe etc. Ry. Co.* v. *Hurley,* 4 Ariz. 258, 36 Pac. 216. The issue joined between the parties was on an alleged express con-

tract. The complaint presents squarely an action at law. No equitable rights are claimed, and no equitable remedy is invoked. No demand was made by either party for a reformation of the contract sued on, nor was the contract disaffirmed by either party. We do not see how the court could disregard the alleged contract and enter a judgment against the bank on the theory that the relation of banker and depositor existed, without departing widely from the pleadings. 31 Cyc. 673.

In the cross-appeal taken by the company, complaint is made of several rulings of the trial court adverse to the company's contentions. The final disposition of the case renders it unnecessary really to discuss these contentions, but since that upon a new trial one of these questions will probably arise again, we have concluded to dispose of the assignment upon that question. The assignment referred to is that the court erred in admitting parol evidence of custom and usage to explain the meaning of the language used in the telegrams and letters that passed between the parties. Spanish was the language used in the original telegrams and letters. The translations of these letters and telegrams as they appear in the record were admitted by the parties to be correct. In these telegrams and letters such words and phrases as "moneda Mexicana," "plata," "Mex.," "peso," "pesos plata," and "billettes de banco" appear. We understand the objection to the evidence explaining the meanings of these words and phrases is based upon the contention that the language used in the communications was clear and plain, and hence that resort could not be had to parol testimony to place a construction upon the terms; that the words and phrases had plain, ordinary, and popular meaning, and should have been construed by the court without the aid of parol testimony.

The general rule unquestionably is that parol evidence is inadmissible to explain, vary, alter, or add to the terms of a written contract in an action at law. This rule, however, is very flexible, and has many exceptions, and in the multitude of exceptions much confusion has arisen. The authorities upon the subject are in hopeless conflict. We are, however, of the opinion that the facts of the instant case present one of the well-defined exceptions 'to the general rule.

Parol testimony of a custom or usage, tending to establish the sense in which certain words or mercantile terms are used in a contract, and elucidating the terms used, is admissible for the purpose of ascertaining the intention of the parties. This is on the theory that parties who contract on a subject, concerning which known usages prevail, by implication, incorporate them into their agreements, if nothing is said to the contrary. *Robinson* v. *United States,* 13 Wall. 363, 20 L. Ed. 653 (see also, Rose's U. S. Notes). See also, *Collender* v. *Dinsmore,* 55 N. Y. 200, 14 Am. Rep. 224; *Walls* v. *Bailey,* 49 N. Y. 470, 10 Am. Rep. 407.

A reference to the record will disclose that the evidence offered by the bank and admitted by the trial court, as to custom and usage, consisted of the testimony of men who were and had been for many years in the banking business and money brokerage circles on the border and in Mexico. As we have intimated, we think the evidence was properly received. It did not tend to contradict or vary the contract, but to define and elucidate technical mercantile terms employed therein. The proofs tended to show that the terms "Mex.," "moneda Mexicana," "peso," "plata," "pesos plata," and "billettes de banco," as used in the alleged contract, are not to be understood in the strict sense as meaning Mexican coin silver dollars, but that such terms, by custom and usage

along the border and in Mexico, should be construed to mean Mexican bank bills.

The judgment rendered was outside the issues joined, and therefore a new trial must be had. It follows that the judgment must be, and it is, hereby reversed, and the cause remanded to the trial court, with directions to grant a new trial to the bank, and take such further proceedings as may be proper and not inconsistent with this opinion.

CUNNINGHAM, C. J., and ROSS, J., concur.