267 P.2d 740

**PIONEER CONSTRUCTORS**

v.

**SYMES et al.**

No. 5655.

Supreme Court of Arizona.

.March 1, 1954.

Rehearing Denied March 30, 1954.

Clarence E. Houston and Edwin R. Powell, Tucson, for appellant.

Evans, Hull, Kitchel & Jenckes, by Norman S. Hull and Ralph J. Lester, Phoenix, for appellees.

STANFORD, Justice.

Action on a promissory note by plaintiff-appellant, Pioneer Constructors, to which defendants-appellees, Symes and Cobble, counterclaimed alleging failure of consideration, overcharges, fraud, and· mis-

representation. Verdict was given for the defendants on their counterclaim for $10,000 and for plaintiff for the balance of its note remaining due and amounting to $3,000. Judgment was entered for appellee for the difference.

Defendants formed a partnership in order to build low-cost houses. Negotiations between the parties began in March, 1948. Plaintiff represented to defendants that it could build the type of houses agreed upon for less than $2,700, an amount which defendants had paid to one Bromon for the construction of a model house to use in making sales in the tract, and plaintiff's first estimate, not including a contractor's fee, was at $2,323 per house; subsequently plaintiff submitted a second estimate of $2,550 per house. The parties executed a written contract which reads in part:

"1. The First Party (plaintiff) will furnish all the materials and labor and construct for the Second Party (defendants), one or more houses in accordance with the attached plans and specifications, total cost of all materials and labor necessary for completion and approval not to exceed $3100.00 per unit.

"2. The Second Party will pay to the First Party the *actual* cost of said material and labor for each of said houses * * * plus the sum of Two Hundred Seventy-five * * * Dollars for each and every said house so constructed.

\* \* \* \* \* \*

"5. It is understood and agreed that the Second Party will pay to the First Party all *actual* expenses incurred by the First Party in connection with the construction of said houses * * *. *It is further understood and agreed that the First Party will not charge the Second Party for office supplies, office labor, equipment maintenance, or depreciation, or similar items of overhead, nor will the First Party charge the Second Party any flat fee or percentage for overhead.*" (Emphasis supplied.)

The $3,100 maximum was placed in the contract at the insistence of a bonding company after the contract was otherwise executed.

Sixty-eight houses were completed in November and December, 1948; of these, sixty-six were one-bedroom houses, the remaining two containing two bedrooms.

In August, 1948, after the project was approximately four months under construction, the bonding company requested a cost breakdown on the houses; this company was interested in the total costs of the houses, including items in addition to costs plaintiff was, at that time, incurring. Defendants informed the plaintiff of this, and the plaintiff complied with a breakdown based on the costs per house. This was

identified and introduced in evidence. The exhibit shows that of a $3,061.58 actual total cost per house, plaintiff's costs were only $2,734.03; this is undisputed; yet, when plaintiff completed the job, it had charged defendants with $3,064 per one-bedroom house, contractor's fees of $275 being charged separately and not being included in this figure, the same not being in issue here. The difference between what plaintiff charged and plaintiff's cost break-down amounting, therefore, to $330 per house, constituting an ostensible overcharge of more than $21,000 on the sixty-six one-bedroom houses.

Before relations were terminated between the parties hereto, defendant, Symes, discovered a number of obvious overcharges on items of material purchased by plaintiff and charged to the job, which were never used. These overcharges totaled $8914 and were called to plaintiff's attention on January 20, 1949, whereupon the plaintiff credited defendants with said amount. Subtracting the credits received from the $21,000 overcharge, this would make a difference of over $12,000 allegedly owing the defendants.

The houses constructed by the plaintiff were all one foot longer than called for by the original plans and specifications. Defendants alleged that plaintiff had proposed to defendants that it would be to their advantage to build the houses one foot longer because the number of cement blocks required then would come in even lots, that this would entail a great saving in labor costs in laying the blocks, and that such saving would more than offset the cost of the extra quantities of material required by the added foot. Defendants were inexperienced in the building business and did not know that adding one foot to each house actually resulted in an added over-all cost on the project amounting to $7,689 over and above any saving that might have been accomplished thereby, and defendants contend that this amount represents an overcharge in addition to the $12,000 mentioned in the preceding paragraph.

In addition to the above alleged overcharges, construction maintenance or depreciation charges for construction equipment mostly owned by plaintiff were made in the sum of $5,425.92.

The final transaction between the parties took place on February 28, 1949. On this date the defendants executed their promissory note to the plaintiff for $4,000 as and for the balance owing to the plaintiff for its building fees. Defendants allege that at this time they did not know of the large amount of overcharges. Defendants paid $1,000 on this note, leaving a balance of $3,000. On April 5, 1950, plaintiff sued to collect this balance and recover its attorney's fees, defendants counterclaiming as we have heretofore stated. Judgment was entered as mentioned previously and plaintiff appeals.

The plaintiff's first assignment of error is that the verdict and judgment are un-

supported and not justified by the evidence and testimony in the case. Plaintiff contends that defendants offered no evidence to show the actual cost of the project. All the defendants' witnesses in giving their testimony accepted the unit price on materials and cost of labor actually used by plaintiff, as evidenced from plaintiff's own statements and vouchers.

In our opinion the evidence was sufficient to support the verdict and the judgment. Plaintiff's unit prices on materials and cost of labor were accepted and used by defendants. Plaintiff's unit prices competently tended to show an ostensible overcharge of $12,000. Indeed, there were other charges, such as those for equipment rental, which raise the aforementioned amount. The jury returned a verdict in favor of defendants for $10,000—an amount less than what defendants might have recovered according to plaintiff's figures. Plaintiff cannot be heard to complain of its own figures. We cannot tell from the record exactly how the jury arrived at the $10,000 verdict, but, under the evidence presented in this case, the sum obviously can be justified. Where there are sufficient facts for the jury to consider, and where the verdict on those facts can be justified under some theory of law, we shall not disturb the judgment and verdict. Babbitt & Cowden Livestock Co. v. Hooker, 28 Ariz. 263, 236 P. 722; also, see Kinnison v. Hulett, 71 Ariz. 396, 228 P.2d 446.

Plaintiff's second assignment is that the testimony of expert witness Frisen was erroneously admitted because it attempted to construe and interpret paragraph 5 of the contract. Counsel for plaintiff objected to Frisen's testimony at two different times, both times being overruled. The first objection was to a question asking how the sentences of the contract were punctuated and the nouns modified, counsel for plaintiff contending at the trial that this question called for a conclusion. This objection was grounded, to all appearances, upon the law preventing an expert witness from substituting his conclusion for that of the jury, not upon the parol evidence rule as plaintiff argues on appeal. Error cannot be predicated except on grounds urged in the objection, Cooper v. Francis, 36 Ariz. 273, 285 P. 271, and if the error is not raised below, it cannot be raised on appeal, Cooper v. Holder, 24 Ariz. 415, 210 P. 690.

Second, to a question asking what equipment, i. e., office equipment or construction equipment, was referred to by the use of the word "equipment", plaintiff objected as follows:

"We object to that answer. It is a question of law as to what those terms mean. It is a question of law what 'equipment' means. This Court will instruct the Jury as to the meaning of the word 'equipment'."

However, plaintiff's reply brief states:

"Plaintiff does not contest the testimony of witness Frisen in testifying to the meaning of the word 'equip-

ment', and indicating thereby that the use of the word included wheelbarrows, ditchers, and related items."

■ This second objection appears to contemplate the parol evidence rule; however, the parol evidence rule necessarily going to the testimony of Frisen as to what the word "equipment" was meant to encompass, and plaintiff, in his reply brief, having abandoned his contention that permitting Frisen to testify to what the word "equipment" encompasses violates the parol evidence rule, nothing remains for us to consider in this assignment of error. Cunningham v. Costello (Sub. Nom. Costello v. Cunningham), 19 Ariz. 512, 172 P. 664, 668, is an analogous situation wherein facts were, in essence, conceded, thereby relieving this court from comparing evidence. Furthermore, the contract was not ambiguous as to the meaning of paragraph five as shall be subsequently discussed herein; therefore, expert witness Frisen's testimony stating the meaning of an unambiguous contract, and stating the meaning correctly as to what "equipment" was meant to encompass, was mere surplusage.

Plaintiff's third assignment of error is that the court erred in failing to grant to the plaintiff attorney's fees in an amount equal to a reasonable percent of the amount found due at the time of collection, and further in failing to include said amount in the judgment.

■ Attorney's fees are not recoverable in this case since the amount of damages recovered by defendants under their counterclaim were greater that the amount plaintiff recovered on the promissory note. The general rule is: where reasonable attorney fees or some designated percentage is provided for in the note, and defendant counterclaims and recovers on the counterclaim, the plaintiff recovering on the note, the amount recoverable for attorney's fees is reduced in proportion to the amount recovered on the note less the amount recovered on the counterclaim. Rinker v. Lauer, 13 Idaho 163, 88 P. 1057; Meadow Valley Land & Investment Co. v. Manerud, 81 Or. 303, 159 P. 559, 560; Bongiovanni v. Fickett, 122 Cal.App. 538, 10 P.2d 539, 541. It follows that in such instance the attorney's fees may be reduced to a point where nothing is recoverable as attorney's fees, and such is the situation in this case.

Plaintiff's fourth assignment of error is that the court erred in denying plaintiff's motion for a directed verdict in its favor on its complaint at the close of defendants' case, for the reason that all the allegations of plaintiff's complaint were admitted by the defendants; that plaintiff's case was undisputed and the defendants put on no evidence against it.

■ Plaintiff contended that the note was executed because of an accord and satisfaction reached between the parties as to construction costs. Defendants contended that the note was given for unpaid contractor's fees and indicated no accord and satisfaction. Which contention was true? The lower court gave defendants'

instruction No. 18, as modified, permitting the jury to determine the issue. But, assuming plaintiff's position that the note was given for construction costs to be true, defendants certainly controverted the issue of construction costs; indeed, offered evidence to show that plaintiff owed them for excessive charges. There was an issue to be decided. To direct a verdict for plaintiff at the close of defendants' case would have been improper for these issues were before the jury: (1) what constituted the consideration for the note (i. e., contractor's fees or construction costs); and (2) whether the note was given because of an accord and satisfaction. Both issues were concerned directly with defendants' right to recover on their counterclaim for construction cost overcharges. The court, therefore, properly refused to direct a verdict in favor of plaintiff at the close of defendants' evidence.

Plaintiff's fifth assignment of error is that the court erred in admitting the testimony of defendant Cobble as to negotiations prior to and contemporaneous with the execution of a written contract, because this testimony violates the parol evidence rule.

It must be remembered that the defendants allege in their counterclaim that the contract was entered into and payments made thereunder on defendants' part because of fraud and misrepresentation on the part of plaintiff. Cobble's testimony tended to prove that originally the construction cost charges were intended and represented to be less than they later amounted to be; that later such charges were found in certain instances to be false; that the $3,100 maximum cost price in the contract was placed there after the contract had been executed in order to secure a bond at the insistence of a bonding company, that this "maximum" figure was considered "ridiculous" by the parties and not intended to indicate a definite set amount to be paid by defendants to plaintiff as and for costs of construction. The testimony of Cobble was offered in support of the charge of fraud and misrepresentation. This issue was properly before the jury which was instructed accordingly on fraud and misrepresentation. The law has long been settled that whereas evidence of prior or contemporaneous oral agreements and negotiations is inadmissible, to vary the terms of a written contract, nevertheless parol evidence is admissible to show fraud. Lutfy v. R. D. Roper, 57 Ariz. 495, 115 P.2d 161. When testimony properly goes to any of the issues of a case, even though it may indirectly affect another issue, such testimony is admissible. Therefore, the lower court committed no error in admitting the testimony of defendant Cobble.

Plaintiff's last assignment of error is that the court erred in rejecting plaintiff's evidence of custom and usage in the Tucson locality regarding the rental of construction machinery, offered by plaintiff

to prove that there was no overcharge for the same, and that the court erred in refusing plaintiff's requested instruction No. 6 concerning the same. Plaintiff offers the general rule as stated in Sonora Bank & Trust Co. v. Compania Agricola, 21 Ariz. 77, 86, 185 P. 638, 641:

"Parol testimony of a custom or usage, tending to establish the sense in which certain words or mercantile terms are used in a contract, and elucidating the terms used, is admissible for the purpose of ascertaining the intention of the parties. This is on the theory that parties who contract on a subject, concerning which known usages prevail, by implication, incorporate them into their agreements, if nothing is said to the contrary. * * *"

To permit parol evidence to go to the jury to explain an ambiguity in a contract, the court must first decide whether the contract is ambiguous. Miller Cattle Co. v. Francis, 35 Ariz. 535, 281 P. 211, Id., 38 Ariz. 197, 298 P. 631. The trial court refused to give any instruction as to ambiguity regarding paragraph five of the contract, and it consistently refused to admit parol evidence of custom and usage to show that heavy equipment was to be charged to defendants and office equipment not to be charged to them as plaintiff alleged the custom to be in the Tucson area. Accordingly, the lower court must have decided that the contract was not ambiguous, with which we agree. The contract expressly and clearly provides that no charge of any kind, flat fee or otherwise will be made for construction equipment depreciation and maintenance. There being no ambiguity, the only issues were: Were the defendants charged for this item contrary to the terms of the contract, and, if so, to what amount?

We might state that in deciding that there was no ambiguity in paragraph five of the contract, because it read that defendants were not to be charged for construction equipment depreciation or maintenance, the trial court placed itself within the general rule as recently stated in Michelson v. House, 54 N.M. 197, 218 P.2d 861, 864, as follows:

" * * * It appears that appellant used various items of equipment and * * * he argues that he saved the owner additional expense. This contention is without merit. The contract is silent respecting reimbursements for personally owned equipment. In the absence of such stipulations, appellant was required to furnish the necessary equipment for the work at hand. The claim was a part of the overhead and clearly falls within the provision of Section six of the contract which expressly excludes reimbursement for overhead and general expenses.

"In Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409, 120 A. 409, 27 A.L.R. 41, the work was

done 'on a time and material basis, with ten per cent. profit as compensation to the contractor, the records of the cost to be kept at all times in such a manner as to be checked and audited by the owners'. The contractor sought to recover as cost items of rent, heat, light, etc. and in rejecting the claim the court said: 'The words (on a time and material basis with 10% profit as compensation to the contractor) will not be extended beyond their exact meaning, and indeed they should be given a restricted meaning. At least they should be considered in the sense in which they are popularly understood. *One thus contracting engages to furnish and keep in condition the tools and necessary equipment to do the work.'* (Emphasis ours.)

"* * * in Shaw v. G. B. Beaumont Co., 88 N.J.Eq. 333, 102 A. 151, 153, 2 A.L.R. 122, the court * * * said: 'So the tools used in the construction of the building, they were a part of the equipment of the contractor; a contractor, when he agrees to build, must, in the absence of a contrary agreement, furnish all the tools and necessary appliances for the work contracted to be done.' "

And, in short, the court read this contract in the light of the ordinary meaning of the words as parties would use them under the circumstances. Accordingly, the lower court committed no error in refusing to admit the testimony as to custom and usage and the instruction concerning same as offered by plaintiff.

Judgment affirmed.

PHELPS, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.