386 P.2d 649

**Emmet SMITH and Evelyn C. Smith,
husband and wife, Appellants,**

**v.**

**Fay RABB, Appellee.**

**No. 7557.**

Supreme Court of Arizona.

Nov. 7, 1963.

Rehearing Denied Dec. 10, 1963.

Emmet Smith and Evelyn C. Smith, in pro. per.

Hill, Savoy & Mitchell, Phoenix, for appellee.

UDALL, Vice Chief Justice.

This case arose as an action in the Superior Court of Pinal County for judgment on a promissory note and foreclosure of a mortgage by which it was secured. A decree was entered in favor of the plaintiff and defendants now appeal. The record is unusually long and, while it contains much that is irrelevant and serves only to confuse the issues, it presents an intriguing study of a complex and protracted lawsuit. Little evidence was actually introduced at the trial; the record consists largely of allegations, affidavits and exhibits filed in support of defendants' various pre-trial motions. We will summarize the facts which have some bearing on the questions raised here.

On January 9, 1956, defendant Emmet Smith executed a promissory note for $6,000, payable twelve months after date to a Phoenix law firm, Rawlins, Davis, Christy, Kleinman & Burrus. As security, he executed a mortgage on 1440 contiguous acres of farm land in Pinal County. The note and mortgage were assigned to the plaintiff on January 27, 1956. Suit was filed on July 17, 1957, the plaintiff alleging the execution of the instruments, their assignment to him by the named payees and the failure of defendant Emmet Smith to pay the face amount when due. It was further alleged that the note was a community obligation of defendants Emmet and Evelyn Smith.

In his separate answer to the complaint Emmet Smith admitted the execution and assignment of the note and mortgage, but denied the validity of the mortgage lien on the described premises. He alleged that the note was given as consideration for legal services by the payees in defending against another suit in which he was then involved; that the legal services were never rendered; and that the execution of the note was fraudulently induced in that the named payees, plaintiff's assignors, never intended to perform, or that they knew, at least, at the time the note was executed, that the services would never be forthcoming. It was alleged further that plaintiff took the instrument knowing of the failure of consideration and the fraud, and was not, therefore, a holder in due course. If this last allegation were true it would enable defendant to set up the same personal defenses which he could have

asserted against the payees themselves. A. R.S. §§ 44–428, 44–458.

The separate answer of Evelyn Smith contained substantially the same denials and allegations as that of her husband and denied in addition that the note was a community obligation or that she had any right, title or interest in the mortgaged property.

After the pleadings were filed a number of motions were made including motions by defendants to bring in plaintiff's assignors as third-party defendants and to dismiss the complaint for lack of indispensable parties. These were denied and the case was finally tried on September 13, 1961.

Defendants did not appear and were not represented at the trial; the plaintiff proceeded with his case and introduced the note, mortgage and assignment as evidence. He testified that he had purchased the note and mortgage for $5,400 and that it remained unpaid. At the close of the evidence the court found for the plaintiff, entered a decree foreclosing the mortgage and ordered the property sold.

No motion to vacate the judgment was ever made and no further proceedings were had at the trial level. Defendants instead filed their notice of appeal and the case was brought here for review. From thirty-one assignments of error enumerated in appellants' brief, we have distilled five which we think merit discussion.

■ Although the point is not raised by the briefs, we note that appellants conducted their entire case *in propria persona,* ostensibly for the reason that the ulterior machinations of the several attorneys who had previously conducted their business made it impossible for them to get counsel. However that may be, they are entitled to no more consideration than if they had been represented by counsel. Ackerman v. Southern Arizona Bank & Trust Co., 39 Ariz. 484, 7 P.2d 944 (1932). They are held to the same familiarity with required procedures and the same notice of statutes and local rules as would be attributed to a duly qualified member of the bar. Wiedemann v. Fox, 191 Cal.App.2d 812, 13 Cal. Rptr. 161 (1961); Stark v. Stark, 109 N.W. 2d 904 (S.D.1961). Such a rule is indispensable to the orderly and efficient administration of justice. With this in mind, we turn to the first of appellants' contentions.

■ They point out that trial judge T. J. Mahoney had acted as associate counsel for the plaintiff in presenting a motion to set the case for trial. While this was his only appearance as counsel, and took place before his election as judge and subsequent participation in that capacity, they argue that it was nonetheless prejudicial and should vitiate the entire proceedings. We agree that it was at least ground for peremptory challenge under A.R.S. §

12–409. But appellants never filed the required affidavit alleging bias or that Judge Mahoney had previously acted as counsel in the case. In fact, no suggestion of bias was ever made in any manner. The right to apply for a change of judge under the statute is waived if timely objection is not made. Murray v. Thomas, 80 Ariz. 378, 298 P.2d 795 (1956); Arizona Conference Corp. of Seventh Day Adventists v. Barry, 72 Ariz. 74, 231 P.2d 426 (1951).

■■ This statutory disqualification operates, as we have said, as a peremptory challenge only. If partiality of the assigned judge can be shown to exist in fact, we have held that it can be raised at any time as a bar to his further participation. Conkling v. Crosby, 29 Ariz. 60, 239 P. 506 (1925). But even in the Conkling case, the challenge was made before the lower court had entered final judgment. In the present situation, appellants seek reversal for reasons raised in the first instance on appeal. This, we have repeatedly held, cannot be done. See Goodman v. Carson, 84 Ariz. 177, 325 P.2d 819 (1958); Pioneer Construction v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L.R. 2d 668 (1954).

■■ Appellants argue further, however, that they had no notice of Judge Mahoney's assignment and no notice that the case had been set for trial; hence, there was no opportunity to challenge his participation. The record contains an order by Judge Mahoney, dated June 22, 1961, granting Emmet Smith 10 days in which to file an amended answer. Presumably this order was made pursuant to motion by defendants. If such was the case, they knew of Mahoney's assignment well in advance of the trial date. In any event, defendants had ample opportunity to move that the judgment be vacated and should have done so. Potter v. Home Owners' Loan Corp., 50 Ariz. 285, 72 P.2d 429 (1937). Moreover, under Uniform Rule of Practice 12, each counsel is responsible for keeping himself advised of the status of his own case. Absent a clear showing to the contrary, we presume the case was set for trial in accordance with Uniform Rules 5(c), (g), and (h). Appellants were therefore on constructive notice of the time of trial. Potter v. Home Owners' Loan Corp., supra; Brown v. Haymore, 43 Ariz. 466, 32 P.2d 1027 (1934); Faltis v. Colachis, 35 Ariz. 78, 274 P. 776 (1929).

■ Appellants assign as error the failure to grant a trial by jury pursuant to their oral request made on September 14, 1959. A written demand, required by R. Civ.P. 38(b), 16 A.R.S., was never made. This constituted waiver of the right to a jury. R.Civ.P. 38(d).

The denial of appellants' motions to bring in third-party defendants and to dismiss the complaint for lack of indispensable parties is also assigned as error. The first of

these motions was accompanied by a third-party complaint against Rawlins, Davis, Christy, Kleinman & Burrus, the named payees of the note and plaintiff's assignors. It set up their breach of the contract by which they were to represent appellants, and fraud, in that they induced the execution of the note knowing that the services for which it was given would never be rendered.

Accepting these allegations as true, the third-party defendants may well have been liable to the Smiths for "all or part of the plaintiff's claim" against them. R.Civ.P. 14(a). On the basis of our opinion in Blakely Oil v. Crowder, 80 Ariz. 72, 292 P.2d 842 (1956), we are inclined to the view that they were not so liable inasmuch as they did not stand in the position of indemnitors of defendants. In any event, it is within the trial court's discretion to deny the motion if it appears that impleader will result in undue complication of the case. General Taxicab Ass'n v. O'Shea, 109 F.2d 671 (D.C. Cir. 1940); American Fidelity & Casualty Co. v. Greyhound Corp., 232 F.2d 89 (5th Cir. 1956). Appellants' third-party complaint would have injected delicate questions of fraud, conspiracy and professional ethics into the controversy. In such circumstances the court must balance the desirability of avoiding circuity of action against possible prejudice to the plaintiff, resulting from complication of the issues. For this reason we cannot say it was an abuse of discretion to deny the motion to bring in third-party defendants.

In their motion to dismiss for lack of indispensable parties, appellants asserted that both the State of Arizona and the United States were interested in the mortgaged lands. The mortgage included 1000 acres which Emmet Smith held under lease from the State. Under Article 10, § 3 of our constitution, A.R.S., state lands may not be mortgaged or otherwise encumbered. But this prohibition refers only to such interest as the state may have in such lands. Union Oil Co. of Arizona v. Norton Morgan Commercial Co., 23 Ariz. 236, 202 P. 1077 (1922). As to that interest, therefore, the mortgage was ineffective and the State could in no way have been prejudiced by the action. Furthermore, the point has become moot since the judgment, as rendered, did not extend to any of the leased property. It embraced only that portion of the land in which defendants had full ownership. That property has since been sold; the judgment was paid in full out of the proceeds and any lien which existed on the leasehold thus discharged.

As to the United States, there is evidence in the record that Emmet acquired forty acres of the mortgaged premises by virtue of a federal land patent granted in 1951. In making application for the patent, Emmet stated that he was not acting di-

rectly or indirectly on behalf of any person other than himself. An action was subsequently filed by Emmet's sister, Virginia Smith Connor, and his brother, Lawrence Smith, seeking a declaration that Emmet held the lands in constructive trust for them. See Smith v. Connor, 87 Ariz. 6, 347 P.2d 568 (1960). According to the trial court findings in that case, Emmet was, in making the application, acting on behalf of himself, Virginia, and Lawrence. Appellants therefore reason that Emmet's statement in the patent application was fraudulent and the patent void.

We note first that fraud in a patent application made under 43 U.S.C. § 1171 provides grounds only for a cancellation proceeding by the Secretary of the Interior. Burke v. Southern Pacific R. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914); United States v. Price, 111 F.2d 206 (10th Cir. 1940). It does not itself void the patent. Diamond Coal & Coke Co. v. United States, 233 U.S. 236, 34 S.Ct. 507, 58 L.Ed. 936 (1914). No cancellation proceeding has ever been instituted. Furthermore, the findings in Smith v. Connor, supra, would not be binding on the Secretary in such an action even if the facts as found in that case were held, under federal law, to constitute fraud sufficient to avoid the patent. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

It is no answer to say that any interest of the United States, or any right it may have had to cancel the patent was jeopardized by the possibility of a foreclosure sale to an innocent purchaser for value. See Standard Oil Co. of California v. United States, 107 F.2d 402 (9th Cir. 1940); United States v. Conklin, 54 F.Supp. 500 (D.Montana 1944). It is well established that the purchaser at a foreclosure sale takes only the interest of the mortgagor. A.R.S. § 12–1626; Metcalf v. Phoenix Title & Trust Co., 33 Ariz. 13, 261 P. 633, 57 A.L.R. 1015 (1927). Furthermore, the purchaser in this case was the mortgagee himself. If he is to be ranked as an innocent purchaser it must be on the basis of record title at the time the mortgage was executed. We conclude that no interest of the United States was prejudiced by the decree and it was not an indispensable party under Rule 19(a). The motion to dismiss on that ground was therefore properly denied.

Finally, appellants contend that Emmet was incompetent to represent himself and that it was error to enter judgment against him without having appointed a guardian ad litem to act in his behalf. Of course, if it appears from any of the proceedings that there is a serious question as to a party's competence, the duty devolves upon the trial court to direct a further inquiry into the matter. Wurster v. Armfield,

175 N.Y. 256, 67 N.E. 584 (1903); Anonymous v. Anonymous, 3 A.D.2d 590, 162 N.Y.S.2d 984 (1957); cf. R.Civ.P. 25(c) and 17(g). But neither the pleadings nor the evidence suggest that the question ever arose below. In the absence of allegations or facts which indicate that a hearing might be in order, the trial judge is entitled to gauge a party's competence by his personal conduct in court. For all that appears from the record, that was done in this case.

Affirmed.

BERNSTEIN, C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.