**126**

**PLANNING PARTNERS INTERNATIONAL, LLC, Plaintiff–Appellee,**

v.

**QED, INC., Defendant–Appellant.**

No. 10CA1848.

Colorado Court of Appeals,
Div. I.

Oct. 27, 2011.

Messner & Reeves, LLC, David W. Feeder, II, Derek C. Blass, Denver, Colorado, for Plaintiff–Appellee.

Campbell Killin Brittan & Ray, LLC, William C. Brittan, Benjamin P. Parrott, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.*

In this breach of contract case, defendant, QED, Inc. (QED), appeals the trial court's judgment awarding attorney fees to plaintiff, Planning Partners International, LLC (PPI), of $188,748.80. The dispositive issue on appeal is the propriety of the court's award of those fees, and because we conclude the trial court erred as a matter of law in calculating them, we reverse and remand with directions.

### I. Background

QED, an electrical supply company, decided to host a Mediterranean cruise for its employees and customers. The cruise was to leave on June 6, 2008 from Barcelona, Spain.

In February 2008, QED hired PPI to plan and coordinate the air travel from Colorado to Spain. The terms of PPI's service were set forth in a letter of agreement signed by the parties.

In March 2008, PPI entered into a standard charter agreement with Omni Air International, Inc. (Omni), a charter flight company. The agreement authorized Omni to assess a fuel surcharge if fuel prices rose, but provided that if the surcharge amounted to ten percent or more of the total contract price, QED would receive notice of it at least thirty days before the departure date.

Three days before the scheduled departure, Omni informed PPI that it was assessing a fuel surcharge of $122,428 (approximately twenty percent of the contract price), and threatened to delay service until it received payment. There was no authorized representative of QED in Colorado available to pay the surcharge, and so PPI agreed to pay it on QED's behalf if QED signed a promissory note and loan agreement (the

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2011.

Agreement). The Agreement was prepared by PPI and included the following provision for attorney fees:

> [QED] agrees to pay on demand reasonable costs and expenses, if any, including reasonable attorneys' fees and expenses, in connection with the enforcement of this Loan Agreement & Promissory Note by PPI.

In July 2008, PPI filed this lawsuit alleging that QED had refused to repay PPI. PPI alleged claims for breach of contract, unjust enrichment, promissory estoppel, fraud, and breach of contract. As relevant here, QED filed counterclaims against PPI for breach of contract relating to the letter of agreement, breach of fiduciary duty, and negligence. The jury returned a verdict awarding PPI $131,725.27 on its breach of contract claim and awarding QED $58,534.65 on its breach of contract counterclaim, for a net judgment to PPI of $73,190.62.

The trial court conducted a hearing on attorney fees, and both parties presented expert witnesses who expressed opinions on the reasonableness of the attorney fees and the need to apportion them. QED argued in the trial court, as it does on appeal, that a significant portion of PPI's attorney fees were incurred in defending all of its counterclaims, including the ancillary ones, and that the trial court erred as a matter of law in refusing to apportion the fees on that basis. The trial court concluded it was not required to apportion the fees, reasoning:

> [T]his is a discretionary function by the trial court in evaluating and assessing the reasonableness of the attorneys' fees requested, and there [are] a number of tools that I can rely on, not the least of which is the discretion to allocate fees amongst the claims sought, the specifics.... [T]his is a discretionary act for me to determine the reasonableness of the fees.

## II. Apportionment of Attorney Fees

We review the amount of the trial court's award of attorney fees under an abuse of discretion standard. *Haystack Ranch, LLC v. Fazzio*, 997 P.2d 548, 556 (Colo.2000). But we review de novo the legal analysis employed by the court in reaching its decision.

*Colorado Citizens for Ethics in Gov't v. Comm. for Am. Dream*, 187 P.3d 1207, 1220 (Colo.App.2008).

Colorado follows the American Rule which provides that, absent a specific statute, court rule, or contract provision to the contrary, attorney fees are not recoverable by a prevailing party in a contract or tort action. *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo.1996); *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002). We construe derogations of the American Rule narrowly. *Sotelo v. Hutchens Trucking Co.*, 166 P.3d 285, 287 (Colo.App.2007).

The parties have not cited, and we have not found, controlling decisions of the Colorado Supreme Court addressing the apportionment of attorney fees issue before us, and divisions of this court have reached the issue under factually distinguishable circumstances. For example, in *Husband v. Colorado Mountain Cellars, Inc.*, 867 P.2d 57, 61 (Colo.App.1993), on which PPI primarily relies, the defendant claimed a substantial portion of the attorney fees awarded were incurred by the plaintiff in defending against defendant's counterclaim and not in prosecuting his claims upon the notes.

However, *Husband*'s procedural posture distinguishes it from the instant case because the attorney fees there were awarded by a jury as part of its general verdict, in a lump sum, and without any special jury instruction on or requests by the parties for apportionment. 867 P.2d at 61–62. Although the defendant in *Husband* argued that a portion of the plaintiff's award derived from defending against its counterclaims, the lump sum verdict made it unclear whether apportionment had actually occurred. As the division observed, "it [was] impossible to determine the amount awarded as fees." *Id.* at 63.

Other cases relied upon by PPI are inapposite. *Karg v. Mitchek*, 983 P.2d 21, 27 (Colo.App.1998), quoted *Husband* but did not independently address the apportionment issue. *Sperry v. Bolas*, 786 P.2d 517, 518 (Colo.App.1989), addressed the scope of a contractual attorney fee provision that entitled the prevailing party to fees relating to the contract.

The cases on which QED relies are also distinguishable because they involved the construction of statutes. For example, in *In re Marriage of Seewald,* 725 P.2d 1171, 1173 (Colo.App.1986), the division concluded there was insufficient evidence in the record "to enable the court to determine the reasonable amount of attorney fees incurred or what portion should be allocated to issues not included with the pre-nuptial agreement." 725 P.2d at 1173. But contrary to QED's contention, the division's decision did not require the trial court to allocate fees on remand. It required the trial court to base its award of fees on sufficient evidence in the record. *See also Voller v. Gertz,* 107 P.3d 1129, 1135 (Colo.App.2004) (remanding the issue of apportionment for lack of support in the record). Furthermore, attorney fees in the domestic context are distinguishable because section 14–10–119, C.R.S.2011, authorizes apportionment, even absent prenuptial contracts.

QED also relies on decisions apportioning award fees to the prevailing party. However, the attorney fee provision at issue here shifts the burden of fees to the borrower regardless of which party prevails. *See Voller,* 107 P.3d at 1135; *Major v. Chons Bros., Inc.,* 53 P.3d 781, 788 (Colo.App.2002) (concluding Fair Labor Standards Act, 29 U.S.C. § 216(b), entitles prevailing plaintiffs to reasonable attorney fees and costs); *Nouri v. Wester & Co.,* 833 P.2d 848, 852 (Colo.App. 1992) (concluding a lease provided successful party with attorney fees for enforcing the lease's terms); *Koontz v. Rosener,* 787 P.2d 192, 199–200 (Colo.App.1989) (concluding former § 8–4–114 (repealed 2003) entitled "winning party" in enforcement of employee compensation payment to attorney fees); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (addressing courts' allocation of attorney fees to prevailing parties); *American Water Development, Inc. v. City of Alamosa,* 874 P.2d 352 (Colo.1994) (apportionment was express condition imposed by court for dismissal of a claim); *Mitchell v. Ryder,* 20 P.3d 1229, 1234 (Colo.App.2000) (C.R.C.P. 11 permitted attorney fees to be apportioned), *rev'd on other grounds,* 54 P.3d 885 (Colo.2002).

We therefore turn to other jurisdictions for guidance, and they have taken three different approaches to the issue.

One approach is illustrated by *Jackson v. Oppenheim,* 533 F.2d 826, 830 (2d Cir.1976), in which the federal appeals court interpreted New York law. In *Jackson,* a debtor unsuccessfully sued his payee for securities fraud and the payee counterclaimed to recover the principal on two promissory notes that shifted "all costs of collections" to the debtor. 533 F.2d at 829–31. Although the payee fully recovered on the notes, the court refused to award him the attorney fees that he incurred defending the fraud claim, concluding it was "incidental" to the collection action. *Id.* at 831; *cf. Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F.2d 516, 524–25 (2d Cir.1990) (awarding a payee all attorney fees because defense of the breach of the loan agreement claim was not a "collateral attack" as was the fraud claim in *Jackson* ).

The rationale of the *Jackson* court in narrowly construing the fee-shifting clause of the note was that New York law on apportionment was unsettled, and the court was "reluctant to imply a result under that law which would conflict with the general 'American rule' against awarding fees against a losing party." 533 F.2d at 831 (citing *Alyeska Pipeline Srvc. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The *Jackson* court also reasoned that mandatory apportionment "avoid[ed] undue discouragement of the bringing of nonfrivolous claims." *Jackson,* 533 F.2d at 831. QED relies heavily on *Jackson.*

Other jurisdictions have construed attorney fees clauses in notes and contracts more liberally, and have allowed the payees of a promissory note to collect fees incurred "in defending against a challenge to the underlying validity of the obligation," even if unrelated or ancillary. *Finalco, Inc. v. Roosevelt,* 235 Cal.App.3d 1301, 3 Cal.Rptr.2d 865, 869 (1991); *see Saad v. GE HFS Holdings, Inc.,* 366 Fed.Appx. 593, 606 (6th Cir.2010) (applying Ohio law); *In re Sure–Snap Corp.,* 983 F.2d 1015, 1019 (11th Cir.1993) (applying Vermont law); *Universal Drilling Co. v. Camay Drilling Co.,* 737 F.2d 869, 875 (10th

Cir.1984) (interpreting unsettled Colorado law); *Duryea v. Third Northwestern National Bank*, 606 F.2d 823, 826 (8th Cir.1979); *Michael–Regan Co. v. Lindell*, 527 F.2d 653, 658 (9th Cir.1975) (applying Washington law). In *Lindell*, 527 F.2d at 659, for example, such a defense to a breach of warranty claim was deemed to be necessary where "the counterclaim was directly asserted against the note by way of offset in an attempt by the maker to reduce or extinguish his debt." These jurisdictions have awarded attorney fees for a payee's defense of "necessary" ancillary claims, but it is unclear whether such an award would be appropriate where a maker succeeded on the maker's counterclaims. *See Finalco*, 3 Cal.Rptr.2d at 869; *Duryea*, 606 F.2d at 826; *but see Universal Drilling*, 737 F.2d at 875 (payee recovered all attorney fees despite maker's success on two subsidiary claims).

A third approach has been adopted by the majority of jurisdictions that have addressed the issue. The leading case is *Pioneer Constructors v. Symes*, 77 Ariz. 107, 267 P.2d 740, 744 (1954), which has been cited as persuasive authority in a number of jurisdictions, including Colorado. *See Wagonmaster, Inc. v. Parrot*, 713 P.2d 417, 418 (Colo. App.1985); *Willie's Construction Co. v. Baker*, 596 N.E.2d 958, 964 (Ind.Ct.App.1992); *Glen Alden Corp. v. Duvall*, 240 Md. 405, 215 A.2d 155, 176 (1965); *Meadow Valley Land & Investment Co. v. Manerud*, 81 Or. 303, 159 P. 559, 560 (1916); *Borchardt v. Wilk*, 156 Wis.2d 420, 456 N.W.2d 653, 657 (Wis.Ct. App.1990).

In *Pioneer*, 267 P.2d at 744, the court stated:

> The general rule is: where reasonable attorney fees or some designated percentage is provided for in the note, and defendant counterclaims and recovers on the counterclaim, the plaintiff recovering on the note, the amount recoverable for attorney's fees is reduced in proportion to the amount recovered on the note less the amount recovered on the counterclaim.

Thus, in *Wagonmaster*, 713 P.2d at 417, a contractor filed an action against the owners to enforce and foreclose a mechanic's lien against the property and to recover damages for the owners' alleged breach of contract in not paying for extras. The owners counterclaimed for damages for the contractor's breach of contract and negligence in the construction of the house. *Id.* The jury awarded $10,000 to the contractor on its complaint and $19,300 to the owners on their counterclaim. *Id.* The construction contract in *Wagonmaster* provided, as relevant here, that the owner would pay interest "on the unpaid balance on past due amounts until it is paid in full and further ... pay any collection costs ... and reasonable attorney's fees and court costs as may be required." 713 P.2d at 417.

A division of this court concluded the contractor was not entitled to any attorney fees. The division reasoned that "[s]ince the amount of damages awarded the owners was greater than the amount awarded the contractor, there was no 'unpaid balance on past due amounts', and 'that the contractor is not entitled to a judgment for attorney fees or interest under the applicable contract provision when the owners obtained a judgment on their counterclaim arising out of the same transaction that is greater than the amount of the judgment in favor of the contractor.'" *Id.* at 418.

*Wagonmaster* did not address the situation here in which the counterclaim reduces, but does not extinguish the amount of the judgment. However, *Borchardt* provides guidance. 456 N.W.2d at 656. There, the plaintiff-payee on a promissory note obtained judgment on the note for $9,469, but the defendants-makers obtained a judgment on their misrepresentation counterclaims for $9,000, leaving a net judgment for the plaintiff of $469. The plaintiff-payee requested $5,890 in attorney fees pursuant to the note.

The court granted attorney fees but reduced them proportionally. It calculated them by dividing the net recovery of $469 by the total damage award ($9469), and multiplying the resulting factor (.049) by the total amount of attorney fees ($5890). Based on that calculation, the court awarded $292 in attorney fees. The *Borchardt* court reasoned that this method of calculating attorney fees avoided the unfair and unreasonable result that "the winner pays the loser." *Id.* at 656–57.

In *Elder v. Triax Co.*, 740 P.2d 1320, 1321 (Utah 1987), the Utah Supreme Court adopted the proportionate rule but limited its scope. Relying on *Wagonmaster*, the *Elder* court held that a plaintiff's right to attorney fees arising from a note or contract can only be defeated by a defendant's successful counterclaims that arise out of the same transaction. The *Elder* court's rationale was that (1) earlier cases did not distinguish between permissive and mandatory counterclaims and (2) it was unfair to allow makers to defeat a payee's recovery of attorney fees by asserting unrelated or ancillary counterclaims. *Id.* at 1322.

We are persuaded by the holdings of the courts in *Pioneer*, *Borchardt*, and *Elder*, and by a division of this court in *Wagonmaster* because they protect the contractual right of a party to collect attorney fees, but they also allow for the filing of non-frivolous counterclaims. *Jackson*, 533 F.2d at 831; *accord Elder*, 740 P.2d at 1322.

We therefore conclude that where reasonable attorney fees are provided for in a promissory note or contract and the judgment based on the note or contract has been reduced by a counterclaim arising out of the transaction, an apportionment of attorney fees is required in proportion to the amount recovered on the note less the amount recovered on the counterclaim. *Borchardt*, 456 N.W.2d at 656.

Here, the trial court found that PPI incurred reasonable and necessary attorney fees of $188,748.80, but it erred in failing to reduce PPI's award proportionately. *See Wagonmaster*, 713 P.2d at 418; *Borchardt*, 456 N.W.2d at 656. The proper amount of attorney fees in this case was $104,868.83. This is calculated by taking the net recovery of the jury's award ($73,190.62) and dividing it by the total award to PPI ($131,725.27), which results in a factor of .5556. Then the total amount PPI's attorney fees ($188,-748.80) should have been multiplied by .5556, which results in a proportionate award of attorney fees to PPI in the amount of $104,868.83.

Our decision does not affect the trial court's discretion to resolve fact-specific issues, such as the counterclaim's relatedness to the underlying transaction and the reasonableness and necessity of the attorney fees. Indeed, here, the trial court found, with record support, that "[a]t its core the issues [between PPI and QED] were sufficiently intertwined and inter-related." This is tantamount to a finding that the claims and counterclaims "arose out of the same transaction."

PPI's final argument is that the trial court's ruling, even if erroneous, constituted harmless error because we may infer from the record that the trial court did apportion the fees. We disagree. The trial court made it clear it was exercising its discretion and was not required to apportion the attorney fees.

Given our disposition of the attorney fees issue, PPI's request for attorney fees on appeal must be denied.

The judgment is reversed and the case is remanded for correction of the award of attorney fees in accordance with the views expressed in this opinion.

Judge ROMÁN and Judge BOORAS concur.