OPINION
BIRDSALL, Judge.
This appeal is from an entry of default judgment and other sanctions ordered pursuant to Arizona Rules of Civil Procedure, Rule 37(b)(2), in favor of plaintiff/appellee Copper State Bank and against defend *440 ants/appellants Joseph D. Saggio and Helen Saggio.
The facts pertinent to this appeal are as follows. In 1976 Joseph D. Saggio, a stockholder in the Copper State Bank (Bank), requested permission to look through the Bank’s books and records. Based upon his written request, Saggio was allowed to see certain records, but the Bank determined that additional records requested did not comply with A.R.S. § 10-052(B) and refused to supply the records.[1]
Subsequently, Saggio began picketing the Bank. On top of his car he carried various signs which stated: “Copper State Bank unfair to stockholder”, “Copper State Bank Violates Law A.R.S. § 10-052(B)” and “Stockholders, Lincoln Thrift was no accident”. The Bank then filed a complaint asking for damages for defamation and interference with business relations, for an injunction preventing further interference with the Bank’s business and for a declaratory judgment that the Bank had fully complied with A.R.S. § 10-052. Because Saggio continued to picket the Bank’s premises, the Bank obtained a temporary restraining order and later, after a court hearing, a preliminary injunction.
In January 1980 Counts Two and Three of the Saggio’s counterclaim, alleging abuse of legal process and libel and slander, were dismissed with prejudice. The trial court determined there was no just reason for delay and entered a final judgment pursuant to Arizona Rules of Civil Procedure, Rule 54(b).
During the trial in September 1980, the Bank filed several motions, among them a Motion for Directed Verdict as to Count One of the counterclaim, for declaratory relief, and for permanent injunction. The court took the motions under advisement and during the trial, dismissed the remainder of the counterclaim with prejudice.
Trial with an advisory jury on the equitable issues began on September 16, 1980, and continued through September 23, 1980. At the conclusion of the case, the jury found for the Saggios and against the Bank on the issue of libel and slander and interference with business relations. The court further found in favor of the Bank on the declaratory judgment and injunction. The preliminary injunction became a permanent injunction and the court determined that the Bank had furnished all the books and records necessary to comply with the Saggio’s stated purposes, pursuant to the statute.
Subsequently, the court granted the Bank’s motion for a new trial on February 20, 1981, based on juror misconduct. The new trial was ordered only on the issues of libel and slander and interference with business relations, claims of the Bank. Trial was again set for September 1982. At this time the Bank found it necessary to notice the deposition of the Saggios since it had been nearly two years since the first trial. Mr. and Mrs. Saggio did not attempt to change the date set for deposition either by protective order or by communicating with the Bank’s attorney and failed to appear for the deposition. An Affidavit of Nonappearance was filed along with a Motion for Sanctions. After a hearing on the Motion for Sanctions, the court found that the Saggios had been properly notified of their depositions and that they had voluntarily failed to appear. For these reasons the court granted the Bank’s motion for sanctions by entering a default judgment against the Saggios pursuant to Rule 37(b)(2), awarding damages to the Bank in *441 the amount of $1.00 and ordering each side to pay its own costs, attorney’s fees and one-half of the jury fees incurred to date.
The Saggios petitioned the court to vacate the judgment regarding jury fees and to set aside the judgment by default. Both motions were subsequently denied and the Saggios appealed.
Joseph Saggio raises fourteen issues on appeal, some of which relate to the first trial. He argues that: (1) the trial court erred in granting appellee’s motion for a new trial, (2) the trial court violated his rights under Art. 2, § 6 of the Arizona Constitution in granting the permanent injunction, and (3) the trial court erred in declaring that the Bank had furnished all the books and records necessary pursuant to A.R.S. § 10-052(B). In his conclusion, he also claims the trial court erred in dismissing his counterclaim with prejudice.
A.R.S. § 12-2101 specifically provides that an appeal may be taken from an order granting a new trial, § 12-2101(F)(1). At the time appellants’ counterclaim was dismissed, the trial court entered a final judgment pursuant to Rule 54(b) making this issue appealable as of October 6, 1980. Declaratory relief was approved and entered in accordance with Rule 58(a) on December 9, 1980. The time for appeal on these issues has passed and those judgments are res judicata.
The next argument is that the court erred in granting appellee’s Motion for Sanctions and ordering judgment by default on the new trial issues then remaining pursuant to Rule 37(b)(2), Arizona Rules of Civil Procedure. We disagree. Rule 37(d), Rules of Civil Procedure, 16 A.R.S., provides in part:
“If a party ... fails (1) to appear before the officer who is to take his deposition, after being served with proper notice ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.” Rule 37(b)(2)(C) specifically allows entry of default against the disobedient party.
We hold that the trial court did not abuse its discretion in entering a default judgment against the appellants. They received notice of the deposition by mail on a Friday prior to a three day weekend, the depositions being scheduled for Tuesday at 10 a.m. The appellants did not notify appellee that they would not appear at that time or attempt to reschedule the deposition. At the hearing on the Motion for Sanctions, Joseph Saggio’s only stated reasons for his failure to appear was that that Tuesday was election day and he was very involved in political activities in his community. He stated he felt that opposing counsel was trying to take advantage and embarrass him and that he responded accordingly.
These reasons do not excuse the failure to appear at the deposition or attempt to reschedule it. It is well established that where a party conducts his case in propria persona he is entitled to no more consideration than if he had been represented by counsel, and he is held to the same familiarity with required procedures and the same notice of statutes and local rules as would be attributed to a qualified member of the bar. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963); Homecraft Corporation v. Fimbres, 119 Ariz. 299, 580 P.2d 760 (App.1978); Bloch v. Bentfield, 1 Ariz.App. 412, 403 P.2d 559 (1965). Thus appellants are held to have knowledge of the possible sanctions for failure to appear for a deposition and the possible procedural steps that could have been taken in lieu of a mere refusal to appear.
Furthermore, the appellants were the defendants in the underlying action for defamation and interference with business. Aside from the jury fees which we discuss later, a judgment of only $1.00 was entered against them. This result adequately satisfied the requirement of Rule 37(d) that the sanction imposed be just. The only monetary result of a new trial could not produce any lesser liability.
*442 Appellants also argue that they were not properly served since they did not receive a subpoena from a process server and that three days was not sufficient notice for the taking of the deposition. As to the first point, appellants may not complain since a subpoena is not necessary in serving a party with notice of a deposition. Rule 5(c), Arizona Rules of Civil Procedure. As to the appellants’ second point, Rule 30(b) requires that a party desiring to take the deposition of any person shall give “reasonable notice”. Our court, in State v. Superior Court of Pima County, 3 Ariz.App. 541, 416 P.2d 435 (1966) has stated that reasonableness is a quality determined by circumstances, and held in that case that twenty-four hours notice was not necessarily unreasonable. In the instant case, the second trial date was set for September 10, 1982. Counsel for the Bank attempted to continue the matter, but appellants refused to so stipulate. The appellants admitted having received the notice of deposition on the afternoon of September 3, the deposition to be taken the morning of September 7. Thus, appellants had at least portions of five days in which they could have made an attempt to reschedule the deposition. Under the circumstances appellants had reasonable notice.
The appellants question the trial court’s decision to enter judgment against them for one-half of all the jury costs incurred by Pinal County.[2] These costs totaled $2,797.45. This figure included costs of $1,956.25 for the first trial and $841.20 for the “second trial”. The motion for sanctions resulting in the default was heard on the day of trial with prospective jurors waiting in the courthouse. When the motion was granted they were dismissed, but it was, of course, necessary that they be paid their daily fee of $12.00 and statutory mileage by Pinal County. A.R.S. § 21-221(A), (B).
It was within the discretion of the trial judge not to assess jury fees for the first trial since the motion for new trial was granted. A.R.S. § 12-343(A); Durkee-Thomas Corporation v. Doherty, 40 Ariz. 399, 12 P.2d 617 (1932) (interpreting the predecessor statute, Sec. 1477 of the Revised Code of 1928). We hold that the court had this discretion even though final judgments were entered on the equitable issues wherein the first jury was advisory. A second jury was required for the new trial and the appellant was not prejudiced by the court's decision to defer the assessment of jury fees to abide the results of the new trial.
There is, however, another problem presented by the trial court’s action regarding the assessment of jury costs. The amounts included in the judgment included not only the statutory jury fee of $12.00 per day but also the mileage paid to the jurors. A.R.S. § 12-332(B) provides that there shall be taxes as a cost a “jury fee” to be fixed by the court, paid to the clerk of the court, and transmitted to the county treasurer. It does not authorize the taxation of the amounts paid to the jurors for mileage. Although this question has not been decided directly before in Arizona, it is clear from the decision in Davis v. Tavasci, 1 Ariz.App. 380, 403 P.2d 315 (1965) that only jury fees and not other expenses were assessed. In that case, the trial court assessed $96.00 for one day and $960.00 for ten days as jury fees (8 jurors at $12.00 daily equals $96.00). The other expenses of jurors, including mileage, are a financial obligation of the county. They are in the same category as the compensation of necessary court personnel and other expenses. See Davis v. Tavasci, supra. The judgments for jury costs against both the appellants and appellee must be set aside and the trial court is ordered to enter new judgments for the jury fees only.
Appellants raise numerous other issues regarding the entry of default judgment and the assessment of jury fees. Since we have found that the trial court acted within *443 its discretion, there is no merit to these arguments.
Affirmed in part and remanded.
HOWARD, C.J., and HATHAWAY, J., concur.

. This statute provides:
"B. Any person who shall have been a holder of record of shares or of a voting trust beneficial interest therefor at least six months immediately preceding his demand or shall be the holder of record of, or the holder of record of a voting trust beneficial interest for, at least five per cent of all the outstanding shares of the corporation, upon written demand as provided in § 10-014 stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose the corporation’s relevant books and records of accounts, minutes, and record of shareholders and to make copies of or extracts therefrom.”

. The appellee does not complain that it was required to pay one-half of these costs even though it was the prevailing party.